ALFONSO VANCHERI, Appellant, v. GNLV CORP., DBA GOLDEN NUGGET HOTEL AND CASINO, Respondent.

No. 18899

June 30, 1989                                    777 P.2d 366

*Barker, Gillock, Koning, Brown & Earley,* and *James P. Chrisman,* and *Robert E. Estes,* Las Vegas, for Appellant.

*Hunterton & Naylor,* and *William Carl Carrico,* Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

Alfonso Vancheri (Vancheri) was Food and Beverage Manager at the Fremont Hotel and Casino. Vancheri resigned his position at the Fremont after being recruited for a managing maitre d' position at the Golden Nugget Hotel and Casino's (GNLV) new gourmet restaurant. The maitre d' position salary paid roughly one half the salary Vancheri was making at the Fremont; however, as maitre d', Vancheri could substantially augment his salary with gratuities. Vancheri was not employed under a written employment contract, but when he came to work at GNLV, he was told by members of executive management that he would have a long and successful association with the GNLV family.

As manager, Vancheri had authority to discipline the employees working in the gourmet room. GNLV had an established disciplinary procedure whereby a verbal warning was given first, followed by a written warning, if the conduct necessitating discipline continued. If the unacceptable conduct continued, the employee was warned in writing again, and was subject to a two week suspension from work. If the conduct continued beyond the third warning, the employee was subject to termination.[1]

Following the established disciplinary procedures, Vancheri placed a waiter, Mark Kaiser, on a two week suspension. Kaiser was related to a GNLV upper level management employee. Upon being notified that he was being suspended for two weeks, Kaiser told Vancheri, "This will never happen. I will see about this . . . you won't last to see this." Within forty-eight hours Vancheri was summoned to the office of Robert Goldstein, Senior Vice President of Operations for GNLV. Goldstein told Vancheri that "word came down that it would be best if [Vancheri would] resign voluntarily." Vancheri did resign.

Vancheri sued GNLV for wrongful termination, alleging breach of an express and implied oral contract of employment, and breach of the implied covenant of good faith and fair dealing. This action was tried before a jury, where Vancheri offered evidence in order to rebut the presumption of at-will employment. At the conclusion of Vancheri's case in chief, GNLV

---

[1]Linda Horn, GNLV Employee Relations Manager, testified that GNLV's policy was to give employees written notices for violations of hotel policy and regulations before they were terminated. She also testified that she processed at least one hundred such warnings per week, and that GNLV terminated one hundred employees per month for violations of policy and rules.

moved for dismissal of the action pursuant to NRCP 41(b). The district court granted the motion to dismiss, finding that Vancheri failed to present any evidence that would provide a basis for finding an express or implied employment contract. Vancheri moved for a new trial pursuant to NRCP 59(a), alleging that the district court erred when ruling on the NRCP 41(b) motion by considering the weight of the evidence and the credibility of the witnesses. The district court denied the motion.

Vancheri contends that the district court erred by dismissing his claim. He asserts that he presented a prima facie case in rebuttal of the at-will presumption, and therefore was entitled to have the case go to the jury for determination.

In Nevada, involuntary dismissal pursuant to NRCP 41(b) is properly granted when the plaintiff fails to prove a sufficient case based on the facts and law before the court. Bates v. Cottonwood Cove Corp., 84 Nev. 388, 391, 441 P.2d 622, 624 (1968). In ruling upon a motion for involuntary dismissal under NRCP 41(b), plaintiff's evidence must be accepted as true, both the trial court and this court must draw all permissible inferences in his favor and not pass upon the credibility of witnesses nor weigh the evidence. *Id.*, 441 P.2d at 624; *Cf.* Roche v. Schwartz, 82 Nev. 409, 412, 419 P.2d 779, 781 (1966) (judge not to weigh or compare inferences in favor of one party and against other, conflicting inferences from known facts for jury determination).

Vancheri's burden below was to introduce sufficient evidence to establish a prima facie case rebutting the at-will presumption. Hernandez v. City of Reno, 97 Nev. 429, 433, 634 P.2d 668, 671 (1981). A prima facie case is defined as sufficiency of evidence in order to send the question to the jury. 9 Wigmore, *Evidence,* § 2494 (Chadbourn rev. 1981). The question of sufficiency of the evidence does not turn on whether the trier of fact will make the desired finding. Therefore, a witness's credibility and the weight of the evidence are not of consequence in the presentation of a prima facie case. *Id.*

The at-will presumption is not enumerated in NRS 47.250 as a disputable presumption. This court has held, however, that NRS 47.250 is illustrative and not exclusive. Privette v. Faulkner, 92 Nev. 353, 357, 550 P.2d 404, 406 (1976). Nevada courts have consistently employed the at-will presumption as a civil disputable presumption. Smith v. Cladianos, 104 Nev. 67, 752 P.2d 333 (1988); K Mart v. Ponsock, 103 Nev. 39, 732 P.2d 1364

(1987). Once recognized, a presumption not only fixes the burden of going forward with evidence, but it also shifts the burden of proof. *Faulkner,* 92 Nev. at 359, 550 P.2d at 408.

Employment "at-will" is a contractual relationship and thus governed by contract law. Smith v. Cladianos, 104 Nev. 67, 752 P.2d 233. An employer can dismiss an at-will employee with or without cause, so long as the dismissal does not offend a public policy of this state. *Ponsock,* 103 Nev. at 47, 732 P.2d at 1369. Vancheri maintains that he presented evidence to support three alternative theories to rebut the at-will presumption: promissory estoppel, existence of an established procedure for termination, and a violation of public policy.

Vancheri contends that a contract not to terminate but for cause existed in view of the parties' statements and conduct. He testified that GNLV management told him that he would have a great future, and that there was potential for advancement within the hotel. The president of GNLV welcomed Vancheri "to the family," and told Vancheri that he had a great future with the business. Vancheri indicated that he relied, to his detriment, on the statements of GNLV management by leaving his job at the Fremont for a lower paying job at the Golden Nugget.

The doctrine of promissory estoppel, which embraces the concept of detrimental reliance, is intended as a substitute for consideration, and not as a substitute for an agreement between the parties. Kruse v. Bank of America, 248 Cal.Rptr. 217 (Ct.App. 1988), *cert. denied,* 109 S.Ct. 869, 870 (Cal. 1989); Smith v. Boise Kenworth Sales, 625 P.2d 417, 422 (Idaho 1981); Restatement (Second) of Contracts § 90(1) (1973). Accordingly, the first prerequisite of the agreement is a promise. Irwin Concrete, Inc. v. Sun Coast Properties, Inc., 653 P.2d 1331, 1337 (Wash.Ct.App. 1982). In order for GNLV to be held liable based upon promissory estoppel, Vancheri must have shown that GNLV's conduct expressed an intention to create something other than an at-will employee relationship.

Vancheri testified that it was his "understanding" that the employment was for a fixed period. He failed, however, to offer any independent evidence indicating the terms of an employment contract. Contracts of employment cannot be created by the subjective expectations of an employee. Roberts v. Atlantic Richfield Co., 568 P.2d 764, 769 (Wash. 1977); Schwartz v. Michigan Sugar Co., 308 N.W.2d 459, 462 (Mich.Ct.App. 1981).

Vancheri was never told that his employment would be terminated only for cause or that he would have employment for life or a specified period of time. General expressions of long term employment or job advancement do not convert an at-will employment contract to a termination only for cause contract. Having not shown that a definitive promise was made to him, Vancheri failed to establish a primary element of promissory estoppel.

Next, Vancheri contends that his status as an at-will employee was modified to a termination only for cause employee by GNLV's established disciplinary procedure. There was uncontroverted evidence that GNLV had a disciplinary procedure in place at the time Vancheri was fired, but it was not followed in his discharge.[2] It is not clear, however, whether this disciplinary procedure applied to Vancheri in his capacity as a manager.

Standardized disciplinary procedures are generally positive additions to a business. They provide employers a method of cautioning employees, and afford employees an opportunity to improve job performance in order to retain employment. They also create a general consistency and security in the work place. If we were to hold that the establishment of standard disciplinary procedures for employees is, in and of itself, sufficient to convert an at-will employee to an employee who can be fired only for cause, employers would be reluctant to continue to establish them.

Based upon the law and policy considerations, we hold that general expressions of job longevity and advancement, and the established disciplinary procedure as described in this case, are not, as a matter of law, sufficient to establish a prima facie case rebutting the at-will employment presumption.

Vancheri's third theory is based on public policy. Vancheri claims that he was terminated due to his age, and, therefore, his termination was discriminatory and in violation of the law and public policy of this state. This court has recognized that the at-will employment rule is subject to limited exceptions founded on

---

[2]The disciplinary procedure was not set forth in an employee handbook or express employment contract. Vancheri testified that the disciplinary procedure was explained to him, and that he followed it, with management's support, in the discipline of other employees working under his supervision. Vancheri offered an inter-company memo, from the personnel department to the gift shop, that outlined the disciplinary procedure as established by testimony.

strong public policy. Hansen v. Harrah's, 100 Nev. 60, 63, 675 P.2d 394, 396 (1984); *Ponsock,* 103 Nev. at 47, 732 P.2d at 1369. Age based discrimination is prohibited by statute. *See* NRS 233.010(1); NRS 613.330(1)(a). Without determining whether such an exception should be recognized for age discrimination, we agree with the district court that Vancheri failed to present sufficient evidence to establish a prima facie case of age based discrimination. Vancheri did not offer evidence of his age at trial. Additionally, GNLV offered evidence showing that Vancheri's replacement was older than Vancheri. Thus, Vancheri's claim of age based discrimination lacks merit. *Cf.* Apeceche v. White Pine Co., 96 Nev. 723, 726, 615 P.2d 975, 977 (1980) (employee carries initial burden establishing prima facie case of discrimination by proving membership in protected class). The district court properly found that as a matter of law no questions of public policy were put at issue by Vancheri's discharge.

Having closely considered the issues presented here on appeal, we hold that Vancheri failed to establish a prima facie case under any of his three theories. Accordingly, the district court properly granted GNLV's motion for involuntary dismissal pursuant to NRCP 41(b) and denied Vancheri's motion for a new trial.

The orders of the district court, dismissing the action and denying a new trial, are affirmed.