RONALD FOSTER; PATRICK COCHRANE; AND FREDERICK DORNAN, APPELLANTS, *v.* TERRY DINGWALL, AN INDIVIDUAL, AND DERIVATIVELY ON BEHALF OF INNOVATIVE ENERGY SOLUTIONS, INC.; MICHAEL HARMAN, SPECIAL MASTER, HYUN IK YANG; AND HYUNSUK CHAI, RESPONDENTS.

No. 50166

February 25, 2010

227 P.3d 1042

*Bailus Cook & Kelesis, Ltd.*, and *Marc P. Cook*, Las Vegas, for Appellants Ronald Foster and Patrick Cochrane.

*Holland & Hart LLP* and *J. Stephen Peek, Matthew J. Kreutzer*, and *Janet L. Rosales*, Las Vegas, for Appellant Frederick Dornan.

*Buchalter Nemer* and *Michael L. Wachtell*, Los Angeles, California, for Respondent Michael Harman.

*Howard & Howard, PC*, and *James A. Kohl*, Las Vegas, for Respondents Hyun Ik Yang and Hyunsuk Chai.

*Lewis & Roca LLP* and *Daniel F. Polsenberg* and *Dan R. Waite*, Las Vegas, for Respondent Terry Dingwall.

# OPINION

By the Court, HARDESTY, J.:

In this opinion, we address two main issues. First, we consider whether an order to strike appellants' pleadings was a proper discovery sanction in this case. Second, we address the burden of proof that a party must satisfy at an NRCP 55(b) prove-up hearing to establish damages, following the entry of default.

Because we conclude that appellants' conduct during discovery was repetitive, abusive, and recalcitrant, we uphold the district court's decision to strike the pleadings and enter default. We clarify that after an entry of default, at an NRCP 55(b)(2) prove-up hearing, the nonoffending party retains the burden of presenting sufficient evidence to establish a prima facie case for each cause of action as well as demonstrating by substantial evidence that damages are attributable to each claim. Accordingly, we uphold the award of compensatory damages to respondent Terry Dingwall because Dingwall presented a prima facie case for damages on each cause of action, which included substantially demonstrating that he was entitled to the relief sought. However, we reverse the compensatory damage award to respondents Hyun Ik Yang and Hyunsuk Chai because it was duplicative and because no evidence was presented to show the relationship between the tortious conduct and the requested award.

## FACTS AND PROCEDURAL HISTORY

The underlying suit arose in August 2005 when Innovative Energy Solutions, Inc. (IESI), a full-service energy corporation, filed a suit against, among others, Dingwall, a director of IESI. In its complaint, IESI alleged that Dingwall breached his corporate fiduciary duties, usurped corporate opportunities, and engaged in civil conspiracy and conversion. On behalf of IESI, Dingwall filed an amended answer and third-party complaint, where he asserted claims[1] against appellants Frederick Dornan, Ronald Foster, and

---

[1]Specifically, Dingwall alleged claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duties, conspiracy, intentional and negligent misrepresentation, abuse of process, intentional in-

Patrick Cochrane, other directors of IESI, in their individual capacities. After Dingwall filed his third-party complaint, IESI shareholders Yang and Chai moved to intervene in the action. The district court granted the motion to intervene, and Yang and Chai asserted derivative claims on behalf of IESI and individual claims against Dornan, Foster, and Cochrane. Subsequently, Yang and Chai moved the district court for an appointment of a receiver alleging that IESI was mismanaging the corporate assets; however, the parties later agreed that a special master should be appointed to examine the records of IESI.

During discovery in November 2006, the parties agreed that depositions of Dornan, Foster, and Cochrane would occur on specified dates in January 2007. Dingwall's counsel agreed to fly to Canada to depose Dornan and Cochrane in their hometown and to depose Foster in Las Vegas, Nevada.

In December 2006, counsel for Dornan, Foster, and Cochrane moved the court to withdraw due to unpaid legal fees. While awaiting the court's decision on the motion, counsel for Dornan, Foster, and Cochrane notified Dingwall that the depositions could not proceed as scheduled because IESI's counsel was also withdrawing and IESI needed to retain new corporate counsel. In response, Dingwall expressed his intent to proceed with the depositions, maintaining that withdrawal of IESI's counsel had no affect on the depositions, and travel had already been arranged and expenses incurred.

After counsel for Dornan and Cochrane again informed Dingwall that neither Dornan nor Cochrane would be available for their depositions in Canada, Dingwall stated that he would proceed with the depositions unless the court issued a protective order. Dingwall also warned Dornan's and Cochrane's counsel that if they failed to attend without obtaining a protective order, he would seek severe sanctions, including striking all pleadings and an entry of default. A protective order was not obtained, and neither Dornan nor Cochrane appeared for his deposition.

Similarly, Foster also stated that he would not attend his deposition, citing his inability to afford legal counsel to represent him. Additionally, Foster notified Dingwall that IESI had filed for bankruptcy. In response, Dingwall maintained that Foster's inability to afford legal representation did not excuse him from attending his scheduled deposition, and absent a protective order, the deposition would continue as scheduled. Dingwall further informed Foster that if Foster failed to attend, he would seek sanctions, including a request to strike all pleadings. Foster replied, stating that he

terference with contractual relations and prospective economic advantage, unjust enrichment, receivership, indemnity, contribution, accounting, and conversion.

would nevertheless not attend his deposition because of health concerns. Foster did not appear for his deposition and no protective order was entered. During this time, Dornan, Foster, and Cochrane had also failed to provide complete responses to Dingwall's interrogatories and failed to produce requested documents.

The court ultimately granted Dornan, Foster, and Cochrane's counsel's motion to withdraw. Dornan, Foster, and Cochrane's counsel drafted the formal order granting the withdrawal motion, which the court signed on January 12, 2007. In the order, counsel listed a Henderson, Nevada, address where Dornan, Foster, and Cochrane could receive further notice. Also included in the withdrawal order was the following statement: "IT IS FURTHER ORDERED ADJUDGED AND DECREED, that the deposition of Counterdefendant/Third Party defendant, Ronald Foster is currently scheduled for January 18, 2007. (*Stay pursuant to Bankruptcy filing*)."[2] (Emphasis added.)

Thereafter, due to Dornan's, Foster's, and Cochrane's failures to appear for their noticed depositions and other alleged discovery violations, Dingwall filed his first motion seeking to strike the pleadings and enter default. Shareholders Yang and Chai joined. Neither Dornan, Foster, nor Cochrane opposed Dingwall's motion for sanctions. Thus, pursuant to Eighth Judicial District Court Rule (EDCR) 2.20(b), as it existed in 2007,[3] the court deemed all allegations in Dingwall's motion admitted.

On March 1, 2007, the court entered an order issuing lesser sanctions against Dornan, Foster, and Cochrane and did not strike the pleadings at that time. The court clarified any confusion as to the January 12, 2007, withdrawal order, by deleting the "Stay pursuant to Bankruptcy filing" language because the stay did not apply to Dornan, Foster, and Cochrane. The court also compelled Dornan, Foster, and Cochrane to supplement their previously deficient responses to interrogatories and requests for production of documents within 10 days. In addition, the court ordered Dornan, Foster, and Cochrane to attend depositions within 30 days. The court expressly warned Dornan, Foster, and Cochrane about their discovery tactics, finding, in part, that they had been acting in bad faith. The court warned that Dornan's, Foster's, and Cochrane's failures to comply with the court's order would result in further sanctions, including an order to strike their pleadings and entry of judgment against them, including an award of fees and costs. Dingwall faxed and mailed multiple copies of the order to Dornan,

---

[2]IESI had filed for Chapter 7 bankruptcy on January 9, 2007. However, neither Dornan, Foster, nor Cochrane had personally filed for bankruptcy at any time during pendency of the underlying suit.

[3]EDCR 2.20 was amended, effective April 23, 2008, and the language of former EDCR 2.20(b) is now found in EDCR 2.20(c).

Foster, and Cochrane at both the designated Henderson address and at IESI's address in Canada.

Dornan, Foster, and Cochrane failed to comply with the court's order. Dornan and Cochrane failed to attend their court-mandated depositions, despite the court's clarification that IESI's bankruptcy stay did not affect Dornan's, Foster's, and Cochrane's discovery obligations. And although Foster attended his deposition, the court determined that Foster refused to answer many relevant questions. In addition, Dornan, Foster, and Cochrane did not supplement their responses to interrogatories or requests for production of documents.

As a result, Dingwall filed a second motion seeking sanctions, again requesting that the court strike the pleadings against Dingwall and enter default against Dornan, Foster, and Cochrane. Neither Dornan, Foster, nor Cochrane opposed Dingwall's motion. Consequently, the court held an evidentiary hearing on the factors set forth in *Young v. Johnny Ribeiro Building*, 106 Nev. 88, 93, 787 P.2d 777, 780 (1990), to determine whether the sanction was proper. Following the evidentiary hearing, the court granted Dingwall's second sanction motion and struck Dornan's, Foster's, and Cochrane's pleadings and entered default against them. The court also announced that it would hold an NRCP 55(b)(2) prove-up hearing to determine the amount of damages.

At the subsequent prove-up hearing, the court first heard from Dingwall, who testified that he had worked with a certified public accountant to calculate an estimate of damages. He also presented demonstrative evidence to show how his asserted causes of action related to the damages sought. Second, the court heard from Yang, who testified that his derivative claims were based on the testimony and evidence presented by Dingwall.

Thereafter, the court entered a judgment detailing its findings of fact, conclusions of law, and award of damages. The court ultimately awarded Dingwall, derivatively on behalf of IESI, compensatory damages totaling approximately $2,890,000, and punitive damages for approximately $8,673,000. In response to Yang and Chai's request to reinstate their IESI stock, the district court declared that Yang and Chai were entitled to their vested shares. The court also awarded Yang and Chai compensatory damages totaling $15,000,000, and punitive damages totaling $45,000,000. The court further awarded Dingwall, Yang, and Chai attorney fees and compelled Dornan, Foster, and Cochrane to pay all special-master fees. Dornan, Foster, and Cochrane appeal.[4]

---

[4]Although the district court awarded punitive damages to Dingwall, Yang, and Chai, all three parties withdrew their claims for punitive damages during oral argument. Therefore, we do not address the propriety of the punitive damages award.

## DISCUSSION

First, we consider whether the district court erred by striking Dornan's, Foster's, and Cochrane's pleadings and entering default against them. Because the district court's detailed strike order sufficiently demonstrated that Dornan's, Foster's, and Cochrane's conduct was repetitive, abusive, and recalcitrant, we conclude that the district court did not err by striking their pleadings and entering default judgment against them.

Second, we consider whether the district court erred by awarding damages against Dornan, Foster, and Cochrane. We take this opportunity to clarify that even where there is an entry of default, the presentation of a prima facie case requires the nonoffending party to present sufficient evidence to show that the amount of damages sought is attributable to the tortious conduct and designed to either compensate the nonoffending party or punish the offending party. Because Dingwall presented evidence to show that the damages sought were related to each cause of action, and that the compensatory damages award was based on reasonably calculated estimates, we uphold the damages awarded to Dingwall. However, we reverse the compensatory damages awarded to Yang and Chai because the award was duplicative and not based on any credible evidence or calculated estimate.

Third, we consider whether the district court abused its discretion by awarding attorney fees to Dingwall, Yang, and Chai. Because the district court found the claims and defenses of Dornan, Foster, and Cochrane were frivolous and asserted in bad faith, we conclude that the district court did not abuse its discretion by awarding attorney fees.

Lastly, we consider whether the district court abused its discretion by ordering Dornan, Foster, and Cochrane jointly and severally liable for the special-master fees. Because the parties failed to object to the district court's clear communication that the special-master fees would be recoverable by the prevailing party, we conclude that the district court did not abuse its discretion by ordering Dornan, Foster, and Cochrane to pay the fees.

### The strike order and entry of default

Dornan, Foster, and Cochrane challenge the district court's order striking their pleadings. They primarily claim that the court erred by failing to make the findings required in *Young v. Johnny Ribeiro Building*, 106 Nev. 88, 787 P.2d 777 (1990), before imposing the strike sanction.[5]

---

[5]Separately, Dornan asserts that the district court erred by grouping him with Foster and Cochrane for sanction purposes, arguing that the district court failed to consider the distinctions between Dornan and his colleagues. We

NRCP 37(b)(2)(C) grants the district court authority to strike the pleadings in the event that a party fails to obey a discovery order. This court generally reviews a district court's imposition of a discovery sanction for abuse of discretion. *Young*, 106 Nev. at 92, 787 P.2d at 779. However, a somewhat heightened standard of review applies where the sanction strikes the pleadings, resulting in dismissal with prejudice. *Id.* Under this somewhat heightened standard, the district court abuses its discretion if the sanctions are not just and do not relate to the claims at issue in the discovery order that was violated. *Id.* at 92, 787 P.2d at 779-80.

NRCP 37(d) specifically provides that the court may strike a party's pleadings if that party fails to attend his own deposition.[6] In addition, this court has upheld entries of default where litigants are unresponsive and engage in abusive litigation practices that cause interminable delays. *Young*, 106 Nev. at 94, 787 P.2d at 780; *Temora Trading Co. v. Perry*, 98 Nev. 229, 230-31, 645 P.2d 436, 437 (1982) (upholding default judgment where corporate officers failed to show up for court-ordered depositions).

In *Young*, we emphasized that "every order of dismissal with prejudice as a discovery sanction [must] be supported by an express, careful and preferably written explanation of the court's analysis of the pertinent factors." 106 Nev. at 93, 787 P.2d at 780. In doing so, this court provided a nonexhaustive list of factors that a district court should consider when imposing this discovery

---

conclude that Dornan's claims and explanations lack merit and that the district court did not err by grouping Dornan with Foster and Cochrane.

[6]NRCP 37(d) states, in pertinent part:

> If a party or an officer, director, or managing agent of a party or a person designated . . . to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

NRCP 37(b)(2) states, in pertinent part:

> If a party or an officer, director, or managing agent of a party or a person designated . . . to testify on behalf of a party fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

sanction. *Id.* In this case, the district court drafted a lengthy strike order, which set forth detailed findings of fact, conclusions of law, and its consideration of each of the *Young* factors. After reviewing the record and the court's order, we conclude that the court's decision to strike defendants' pleadings and enter default was just, related to the claims at issue in the violated discovery order, and supported by a careful written analysis of the pertinent factors.

Additionally, we conclude that appellants' continued discovery abuses and failure to comply with the district court's first sanction order evidences their willful and recalcitrant disregard of the judicial process, which presumably prejudiced Dingwall, Yang, and Chai. *See Hamlett v. Reynolds*, 114 Nev. 863, 865, 963 P.2d 457, 458 (1998) (upholding the district court's strike order where the defaulting party's "constant failure to follow [the court's] orders was unexplained and unwarranted"); *In re Phenylpropanolamine (PPA) Products*, 460 F.3d 1217, 1236 (9th Cir. 2006) (holding that, with respect to discovery abuses, "[p]rejudice from unreasonable delay is presumed" and failure to comply with court orders mandating discovery "is sufficient prejudice"). In light of appellants' repeated and continued abuses, the policy of adjudicating cases on the merits would not have been furthered in this case, and the ultimate sanctions were necessary to demonstrate to future litigants that they are not free to act with wayward disregard of a court's orders. Moreover, we conclude that Dornan's, Foster's, and Cochrane's failure to oppose Dingwall's second motion to strike constitutes an admission that the motion was meritorious. *Cf. King v. Cartlidge*, 121 Nev. 926, 927, 124 P.3d 1161, 1162 (2005) (stating that an unopposed motion may be considered as an admission of merit and consent to grant the motion (citing DCR 13(3))).

Accordingly, we affirm the district court's decision to strike Dornan's, Foster's, and Cochrane's pleadings and enter default against them.

### Damages award

Dornan, Foster, and Cochrane next argue that the district court erred by awarding compensatory damages to Dingwall, Yang, and Chai, because Dingwall, Yang, and Chai did not provide competent evidence to support the award of damages. In addition, Dornan, Foster, and Cochrane argue that Yang and Chai did not establish a prima facie case for each cause of action because they failed to show that they could prevail at a trial on the merits.

Where default is entered by a district court, the court, if necessary, may conduct a prove-up hearing under NRCP 55(b)(2) to determine the amount of damages. *See Hamlett*, 114 Nev. at 866-67, 963 P.2d at 459. Generally, when an entry of default judgment under NRCP 55(b)(2) is for an uncertain or incalculable sum, the

plaintiff must prove up damages, supported by substantial evidence. *Kelly Broadcasting v. Sovereign Broadcast*, 96 Nev. 188, 193-94, 606 P.2d 1089, 1092 (1980), *superseded by statute on other grounds as stated in Countrywide Home Loans v. Thitchener*, 124 Nev. 725, 742, 192 P.3d 243, 254 (2008); *see also Young v. Johnny Ribeiro Building*, 106 Nev. 88, 94, 787 P.2d 777, 781 (1990). However, where default is entered as a result of a discovery sanction, the nonoffending party "need only establish a *prima facie* case in order to obtain the default judgment." *Young*, 106 Nev. at 94, 787 P.2d at 781.

In our discussion in *Young*, however, we did not clearly outline what evidence is required to prove a prima facie case, particularly, the extent to which a nonoffending party must prove damages. In addition, we have not explicitly reconciled the defaulting party's right to challenge fundamental defects of the nonoffending party's prima facie case for damages with the district court's discretion to conduct the NRCP 55(b)(2) prove-up hearing in a manner it deems appropriate. We therefore take this opportunity to clarify these issues.

 ██

Generally, where a district court enters default, the facts alleged in the pleadings will be deemed admitted. *Estate of LoMastro v. American Family Ins.*, 124 Nev. 1060, 1068 n.14, 195 P.3d 339, 345 n.14 (2008). Thus, during an NRCP 55(b)(2) prove-up hearing, the district court shall consider the allegations deemed admitted to determine whether the nonoffending party has established a prima facie case for liability. *Id.* This court has defined a "prima facie case" as "sufficiency of evidence in order to send the question to the jury." *Vancheri v. GNLV Corp.*, 105 Nev. 417, 420, 777 P.2d 366, 368 (1989). A prima facie case is supported by sufficient evidence when enough evidence is produced to permit a trier of fact to infer the fact at issue and rule in the party's favor. *Black's Law Dictionary* 1310 (9th ed. 2009).

In *Young*, we affirmed the district court's entry of default and concluded that at the NRCP 55(b)(2) prove-up hearing, the nonoffending party's prima facie accounting was supported by substantial evidence, which included a "15-page authenticated accounting [summarizing] partnership disbursements, receipts, liabilities and assets." 106 Nev. at 94-95, 787 P.2d at 781. And by reviewing the evidence presented and concluding that a prima facie case was established, we impliedly determined that a nonoffending party must sufficiently demonstrate, by substantial evidence, that it is entitled to the damages or relief sought. *Id.*

 ██

We also concluded in *Young* that because default was entered as a result of the defaulting party's abusive litigation practices, the de-

faulting party "forfeited his right to object to all but the most patent and fundamental defects in the accounting." *Id.* at 95, 787 P.2d at 781. Indeed, where a district court determines that an NRCP 55(b)(2) prove-up hearing is necessary to determine the amount of damages, the district court has broad discretion to determine how the prove-up hearing should be conducted and the extent to which the offending party may participate. *Hamlett*, 114 Nev. at 866-67, 963 P.2d at 459. The district court, for example, has the discretion to limit the defaulting party's presentation of evidence where the court has determined that the nonoffending party has presented sufficient evidence to establish the essential elements of the prima facie case for which it seeks relief. *Id.* Where, on the other hand, the defaulting party identifies a "fundamental defect[ ]" in the nonoffending party's case, it would be an abuse of discretion for the district court to preclude the defaulting party from presenting evidence to challenge the claim. *See Young*, 106 Nev. at 95, 787 P.2d at 781; *Hamlett*, 114 Nev. at 867, 963 P.2d at 459. We note that this is especially true when the nonoffending party seeks monetary damages without demonstrating entitlement to the relief sought or that the damage award is reasonable and accords with the principles of due process.

Following the principles set forth in both *Young* and *Hamlett*, we hold that although allegations in the pleadings are deemed admitted as a result of the entry of default, the admission does not relieve the nonoffending party's obligation to present sufficient evidence to establish a prima facie case, which includes substantial evidence that the damages sought are consistent with the claims for which the nonoffending party seeks compensation. In other words, where the nonoffending party seeks monetary relief, a prima facie case requires the nonoffending party to establish that the offending party's conduct resulted in damages, the amount of which is proven by substantial evidence. *See Vancheri*, 105 Nev. at 420, 777 P.2d at 368. We therefore stress that we do not read *Young* and *Hamlett* as entitling a nonoffending party to unlimited or unjustifiable damages simply because default was entered against the offending party.

### Damages awarded to Dingwall

In this case, after holding an NRCP 55(b)(2) prove-up hearing, the district court awarded Dingwall, derivatively on behalf of IESI, compensatory damages totaling approximately $2,890,000. After careful review of the record, we are satisfied that at the

NRCP 55(b)(2) prove-up hearing, Dingwall presented sufficient evidence to support a prima facie case for each derivative cause of action.[7] Accordingly, we conclude that the district court did not err for three reasons. First, we conclude that the factual allegations contained in Dingwall's third amended complaint sufficiently established the elements necessarily required to prove each claim. Importantly, Dingwall's allegations demonstrated that he was entitled to the relief sought as it related to each cause of action.

Second, Dingwall presented substantial evidence at the prove-up hearing to support his claim for damages. Dingwall testified that he arrived at his estimate of damages by working with a certified public accountant to review roughly 50,000 pages of documents gathered over at least two years. For each cause of action, Dingwall presented charts and other demonstrative evidence to the court to prove how he arrived at the amount of damages for that particular cause of action. For example, for his breach of fiduciary duty claim, Dingwall presented evidence to show that as directors of IESI, Foster used corporate funds to advance a competing entity (IESI Canada); that Dornan, Foster, and Cochrane used IESI corporate funds for their personal benefits; and that advances were made toward a company that had no business relationship with IESI. *See Stalk v. Mushkin*, 125 Nev. 21, 28, 199 P.3d 838, 843 (2009) (providing that a breach of fiduciary duty claim requires an injury resulting from the tortious conduct of the defendant who owes a fiduciary duty to the plaintiff). Dingwall then demonstrated how he estimated and calculated the damages as a result of these indiscretions.

Third, the district court did not unnecessarily prevent Dornan, Foster, and Cochrane from participating in the prove-up hearing. Dornan, Foster, and Cochrane cross-examined Dingwall, and although the court allowed them the opportunity, they declined to cross-examine Dingwall's certified public accountant. Thus, there is no indication that the court abused its discretion when conducting the prove-up hearing.

Accordingly, we conclude that the district court did not err by awarding compensatory damages to Dingwall because he presented a prima facie case for each cause of action, including substantial evidence that the damages sought were related to the asserted causes of action, and the damages were calculated to compensate for the harm.

---

[7]Dingwall asserted causes of action for: breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, constructive fraud, intentional misrepresentation, conversion, and indemnity. We note that certain causes of action listed in footnote 1 had been subsequently abandoned by Dingwall throughout the litigation.

*Damages awarded to Yang and Chai*

At the NRCP 55(b)(2) prove-up hearing, the district court awarded compensatory damages of $15,000,000 to Yang and Chai, individually. However, we conclude that the district court committed error when it awarded compensatory damages to Yang and Chai because the award was duplicative, and even if it was not duplicative, Yang and Chai did not present substantial evidence to support the amount of damages sought.[8]

At the outset, we reject Foster's and Cochrane's argument that damages awarded to Yang and Chai were improper because Yang and Chai did not demonstrate that they could prevail on the merits at trial. Where default is entered as a discovery sanction, the nonoffending party is not required to prove likelihood of success on the merits; rather, it is only required to prove a prima facie case to support its claims. *See Young v. Johnny Ribeiro Building*, 106 Nev. 88, 94, 787 P.2d 777, 781 (1990).

The claims under which Yang and Chai sought individual recovery were not clearly set forth in either their second amended complaint or at the prove-up hearing, at which only Yang testified; however, it appears that Yang and Chai sought to recover individually for either intentional or negligent misrepresentation, alleging that they were wrongfully induced by Dornan, Foster, and Cochrane into selling or transferring their stock. At the prove-up hearing, Yang was asked what relief he and Chai sought for their misrepresentation claim. Yang and Chai principally sought declaratory judgment—the reinstatement of their stock ownership and the cancellation of Dornan's, Foster's, and Cochrane's stock—which the district court granted. Yang and Chai did not plainly seek monetary damages under that cause of action. Therefore, by awarding both declaratory relief—the reinstatement of Yang and Chai's stock—and monetary relief—$15,000,000—we conclude that the award resulted in duplicative recovery for a single cause of action.

Even if the award was not duplicative, Yang and Chai did not present sufficient evidence to establish a prima facie case for intentional or negligent misrepresentation. *See Nelson v. Heer*, 123 Nev. 217, 225, 163 P.3d 420, 426 (2007) (providing the elements of intentional misrepresentation: "'(1) a false representation that is

---

[8]Yang and Chai also sought monetary damages derivatively, on behalf of IESI, for various causes of action. Because the court did not award Yang and Chai derivative relief, we do not discuss whether substantial evidence supported those claims.

made with either knowledge or belief that it is false . . . , (2) an intent to induce another's reliance, and (3) damages that result from this reliance''); *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 449, 956 P.2d 1382, 1387 (1998) (providing that one who, without exercising reasonable care or competence, ''supplies false information for the guidance of others in their business transactions'' is liable for ''pecuniary loss caused to them by their justifiable reliance upon the information''). Both causes of action require a showing that damages resulted from the tortious misrepresentations. *Nelson*, 123 Nev. at 225, 163 P.3d at 426; *Barmettler*, 114 Nev. at 449, 956 P.2d at 1387. And although default was entered in this case and the pleadings were deemed admitted, *see Estate of LoMastro v. American Family Ins.*, 124 Nev. 1060, 1068 n.14, 195 P.3d 339, 345 n.14 (2008), the admission of the pleadings did not relieve Yang and Chai of their responsibility to show that they were entitled to relief and that the amount of damages sought corresponded with the asserted causes of action. In other words, because both intentional and negligent misrepresentation require a showing that the claimed damages were caused by the alleged misrepresentations, *Nelson*, 123 Nev. at 225, 163 P.3d at 426; *Barmettler*, 114 Nev. at 449, 956 P.2d at 1387, it was not sufficient for Yang and Chai to merely assert the fact that they were damaged without showing substantial evidence that the amount of damages sought were both attributed to the tortious misrepresentation and intended to compensate Yang and Chai for the harm caused by the misrepresentation. *See Miller v. Schnitzer*, 78 Nev. 301, 309, 371 P.2d 824, 828 (1962), *abrogated on other grounds by Ace Truck v. Kahn*, 103 Nev. 503, 508, 746 P.2d 132, 135-36 (1987), *abrogated on other grounds by Bongiovi v. Sullivan*, 122 Nev. 556, 582-83, 138 P.3d 433, 451-52 (2006).

Therefore, because the award was duplicative, and because Yang did not present substantial evidence to show that $15,000,000—the amount of damages awarded—was related to the harm caused, we reverse the award of compensatory damages to Yang and Chai.

### Attorney fees

The district court awarded Dingwall, Yang, and Chai attorney fees after it entered default judgment against Dornan, Foster, and Cochrane for their wrongful conduct, particularly their failure to comply with the court's March 1, 2007, discovery order and the fact that their claims and defenses were frivolous, asserted in bad faith, and not based in law or fact.

Foster and Cochrane argue that the district court erred by awarding attorney fees to Dingwall, Yang, and Chai because they each recovered more than $20,000, and thus were not entitled to attor-

ney fees under NRS 18.010(2)(a). Dornan did not challenge the award of attorney fees. This court will review a district court's grant of attorney fees for abuse of discretion. *Albios v. Horizon Communities, Inc.*, 122 Nev. 409, 417, 132 P.3d 1022, 1027-28 (2006).

We conclude that the award of attorney fees was proper. In a lengthy and exhaustive judgment, the district court expressly recited the repetitive, abusive, and recalcitrant actions of Dornan, Foster, and Cochrane and found that their claims and defenses were not based in law or fact and as such were frivolous and asserted in bad faith. First, appellants failed to cooperate and comply with the district court's discovery order. NRCP 37(b)(2) permits the district court to require the offending party to pay reasonable attorney fees as sanctions for discovery abuses. Second, appellants' claims and defenses were frivolous and not based in law or fact. NRS 18.010(2)(b) permits a district court to award attorney fees when a party's claims or defenses are brought without a reasonable ground or to harass the prevailing party. After reviewing the judgment and record, we conclude that the district court did not abuse its discretion in awarding attorney fees. Because the district court did not abuse its discretion, we affirm the district court's award of attorney fees.

*Special-master fees*

Foster and Cochrane also argue that, because the parties had reached a cost-sharing agreement as to how the special-master fees would be split, the district court abused its discretion by ordering the defendants jointly and severally liable for special-master fees.

Because the appointment of a special master is within the district court's discretion, and because a special master is entitled to a reasonable remuneration for his or her services, this court will review the district court's award of special-master fees for abuse of discretion. *See State v. District Court*, 152 P.3d 566, 570 (Idaho 2007); 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2608 (3d ed. 2008).

In this case, the district court held a hearing concerning the appointment of a special master. During the hearing, the parties and the court discussed how the special-master fees would be allocated. Foster and Cochrane argue that the parties agreed to split the fees 50/50. However, after the parties agreed to split the fees 50/50, the district court clearly communicated that the special-master fees

would be recoverable at the end of the case by the prevailing party. Neither party objected to the court's conclusion that special-master fees were recoverable by the prevailing party.

Thus, we conclude that when the district court entered default against Dornan, Foster, and Cochrane, it essentially determined that Dingwall, Yang, and Chai were the prevailing parties. Therefore, it was within the court's discretion to order Dornan, Foster, and Cochrane to pay the special-master fees.

## CONCLUSION

We conclude that the court's decision to strike Dornan's, Foster's, and Cochrane's pleadings was supported by sufficient evidence under the factors set forth in *Young v. Johnny Ribeiro Building*, 106 Nev. 88, 93, 787 P.2d 777, 780 (1990). Because we conclude that at the NRCP 55(b)(2) prove-up hearing Dingwall presented sufficient evidence to support a prima facie case for each cause of action, including substantial evidence that demonstrated that the amount of damages was related to each claim, we affirm the district court's award of compensatory damages to Dingwall. However, we reverse the award of damages to Yang and Chai because it was duplicative and not supported by evidence showing that it was related to the claims or calculated to compensate for the harm caused. Additionally, because we conclude that Dingwall, Yang, and Chai were properly entitled to attorney fees, we affirm the district court's award. Finally, we affirm the district court's order compelling Dornan, Foster, and Cochrane to pay the special-master fees.

Accordingly, we affirm in part and reverse in part the district court's judgment.

PARRAGUIRRE, C.J., and DOUGLAS and GIBBONS, JJ., concur.

CHERRY, J., with whom SAITTA and PICKERING, JJ., agree, concurring in part and dissenting in part:

I concur with my colleagues in the majority in reversing the award of damages to Yang and Chai because it was duplicative and not supported by evidence showing that it was related to the claim or calculated to compensate for harm caused. However, I respectfully dissent from my colleagues as to the striking of the pleadings filed by Dornan, Foster, and Cochrane. The majority concludes that the court's decision to strike the above-mentioned pleadings was supported by sufficient evidence under the factors set forth in *Young v. Johnny Ribeiro Building*, 106 Nev. 88, 787 P.2d 777 (1990). I respectfully disagree.

As to Dornan, Foster, and Cochrane, I would hold the following: (1) these parties did not display the requisite degree of willfulness necessary to support the striking of pleadings and ordering

of sanctions under *Young*; (2) Dornan suffered from health problems; (3) Dornan did not act willfully because he reasonably believed that the IESI bankruptcy stayed discovery; (4) Dornan was unable to comply with Dingwall's discovery requests; (5) the district court failed to properly consider Dornan's justification for noncompliance; (6) the sanction was too severe in light of the totality of the circumstances, and lesser sanctions would have been adequate to remedy the situation; (7) the district court erred when it assumed prejudice to Dingwall; (8) the district court did not consider the feasibility and fairness of alternative, less severe sanctions; and (9) Dornan, Foster, and Cochrane were denied a trial on the merits concerning liability and also were denied a trial on the merits concerning damages. I also question how the sanctioning of these parties is just, fair, and has a deterrent purpose as to other cases in our state.

For these reasons, I must dissent as to the striking of pleadings filed on behalf of Dornan, Foster, and Cochrane.