# IN THE SUPREME COURT OF THE STATE OF NEVADA

NORTH AMERICAN PROPERTIES, A PARTNERSHIP COMPOSED OF TIMOTHY S. HEERS; GARY R. HEERS; CHERYL D. NOTLE; TERRIE D. HEERS; AND CATHLEEN J. HEERS, Appellants,
vs.
MCCARRAN INTERNATIONAL AIRPORT; AND CLARK COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, Respondents.

No. 61997

FILED

FEB 19 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court summary judgment in a government takings action. Eighth Judicial District Court, Clark County; Jerome T. Tao, Judge.

Appellant North American Properties (NAP) owned land close to McCarran Airport. Respondents McCarran International Airport and Clark County (collectively, the County), through Ordinance 1599, imposed certain height restrictions for structures close to McCarran Airport, and a portion of the airspace above NAP's property was encumbered. This court has already held that Ordinance 1599 is a regulatory per se taking. *McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 675, 137 P.3d 1110, 1130 (2006).

NAP sued to recover compensation for the County's taking. During the course of litigation, the district court found that NAP misrepresented when it owned the property and engaged in discovery abuses by failing to disclose evidence that might have shown (1) NAP

16-05459

lacked standing, (2) other necessary parties had an interest in NAP's claim, and (3) NAP was judicially estopped from bringing a takings claim. Among other documents, NAP failed to timely disclose a deed of trust on the property, two ownership transfers, and a bankruptcy involving the property.

Based on these misrepresentations and discovery abuses, the district court sanctioned NAP through its inherent powers and NRCP 37. Specifically, the district court applied an adverse inference against NAP, concluding that unproduced documents would show NAP lacked standing and was judicially estopped from bringing a takings claim. After applying these adverse inferences, the district court granted the County's motion for summary judgment, holding that NAP did not have standing to sue and it was judicially estopped from bringing the takings claim. In light of NAP's egregious abuses, we affirm the district court's decision to impose case-ending sanctions pursuant to its inherent powers.[1]

*The record clearly shows that NAP engaged in egregious litigation abuses*

The district court's decision to sanction NAP was based on two principal findings: (1) from 2009 to 2012, NAP misrepresented to the court that it owned the property when it filed its complaint and never attempted to fix this misrepresentation, even when it was clear the district court was

---

[1]Having found that the district court did not abuse its discretion in issuing case-ending sanctions through its inherent powers, we need not address whether the district court abused its discretion in also issuing a case-ending sanction pursuant to NRCP 37. *See Ash Springs Dev. Corp. v. O'Donnell*, 95 Nev. 846, 848, 603 P.2d 698, 699-700 (1979) ("Because of our disposition, it is unnecessary to reach the other issues raised by the parties.").

relying on it; and (2) NAP failed to disclose and review for relevancy a huge cache of documents held in Arizona until after the close of discovery, and a substantial number of those documents were later found to be relevant. We conclude the record substantially and clearly supports the district court's findings. *See Weddell v. H2O, Inc.*, 128 Nev. 94, 101, 271 P.3d 743, 748 (2012) (stating that a district court's factual findings will be upheld unless they are clearly erroneous or unsupported by substantial evidence).

First, the record plainly supports the district court's conclusion that NAP affirmatively misrepresented its ownership to the court and then failed to correct that misrepresentation even after it was clear the court was relying on it. NAP's initial complaint says "[a]t all relevant times, [NAP] has been the owner" of the property. In opposition to a motion challenging its standing, NAP stated "the County tax records show NAP as the record title owner at the time of the taking alleged and no other transactions are at issue." At a hearing on a motion to dismiss NAP's complaint for lack of standing, NAP's counsel said NAP "is the name of the entity that has always owned this property . . . . [NAP is] the name of the partnership that owns this property." NAP's amended complaint repeats that "[a]t all relevant times, NAP has been the owner" of the property. NAP also claimed that "[t]here is no genuine dispute" that "[p]laintiffs own" the property. Based on these representations, the district court granted NAP's motion for partial summary judgment regarding standing, finding that "[t]he [p]laintiffs in this case are the owners of" the property. The record does not show any effort by NAP to correct the district court's misconception of the property's actual ownership history.

Additionally, the record clearly supports the district court's conclusion that NAP (1) did not produce documents related to its standing until the County brought forth newly discovered documents showing that the district court might have incorrectly held that NAP had standing; (2) provided an enormous number of relevant documents after the close of discovery, just days before trial; and (3) failed to review a large cache of its documents for relevancy. On June 8, 2012, the County brought a motion for summary judgment challenging the district court's earlier conclusion that NAP had standing to sue. This is the first time the record indicates NAP did not own the property when it filed suit. Discovery closed three weeks later on June 29, 2012. On August 7, 2012, the district court specifically ordered production of documents related to (1) the property's sale to NAP, Inc., and a third party during bankruptcy; (2) Household Bank's deed of trust; and (3) NAP, Inc.'s bankruptcy. At a September 12, 2012, hearing, one of NAP's general partners disclosed, for the first time, that "millions of documents, literally," regarding businesses owned and operated by the general partners, including NAP, were held in a storage facility in Arizona, and no one had disclosed those documents or reviewed them for relevancy. At a September 19, 2012, status check, NAP's counsel informed the court that NAP had produced 22 banker boxes of relevant material, and that a significantly greater number of documents remained that needed to be reviewed for relevancy and disclosed.

Therefore, the record supports the district court's determination that "the Plaintiff affirmatively misrepresented its standing to the Court, induced the Court to grant partial summary judgment based upon that misrepresentation, knew that the Court relied upon its misrepresentations, and then failed to produce documents in its possession

for over eighteen months that could have revealed the misrepresentation." Having concluded that the district court's factual description of NAP's misconduct is supported by substantial evidence, we must now determine whether the district court imposed an appropriate sanction.

*The district court did not abuse its discretion in imposing case-ending sanctions against NAP*

District courts in Nevada may sanction abusive litigation practices through their inherent powers. *Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990). A court's inherent power to sanction is designed "to protect the dignity and decency of its proceedings and to enforce its decrees, and thus it may issue contempt orders and sanction or dismiss an action for litigation abuses." *Halverson v. Hardcastle*, 123 Nev. 245, 261, 163 P.3d 428, 440 (2007). Generally, "this court will not reverse sanctions absent a clear showing of abuse of discretion." *Hamlett v. Reynolds*, 114 Nev. 863, 865, 963 P.2d 457, 458 (1998). However, case-ending sanctions require "a somewhat heightened standard of review." *Foster v. Dingwall*, 126 Nev. 56, 65, 227 P.3d 1042, 1048 (2010). That somewhat-heightened review requires this court to determine whether (1) the sanction is just and relates to the specific conduct at issue; and (2) the district court engaged in an express, thoughtful, and preferably written analysis of all material factors. *Id.*; *Young*, 106 Nev. at 92-93, 787 P.2d at 779-80. Such factors might include:

> [1] the degree of willfulness of the offending party, [2] the extent to which the non-offending party would be prejudiced by a lesser sanction, [3] the severity of the sanction of dismissal relative to the severity of the discovery abuse, [4] whether any evidence has been irreparably lost, [5] the feasibility and fairness of alternative, less severe sanctions, such as an order deeming facts relating to improperly withheld or destroyed evidence to be

SUPREME COURT
OF
NEVADA

(O) 1947A

5

admitted by the offending party, [6] the policy favoring adjudication on the merits, [7] whether sanctions unfairly operate to penalize a party for the misconduct of his or her attorney, and [8] the need to deter both the parties and future litigants from similar abuses.

*Young*, 106 Nev. at 93, 787 P.2d at 780.

First, we conclude that the district court's case-ending sanctions were both just and sufficiently related to NAP's underlying misconduct. NAP's misrepresentations and evasive discovery practices were not related to some tangential issue, but its actual ability to bring a claim against the County. NAP's abuses directly impaired the district court's ability to determine whether NAP (1) had standing to sue, (2) failed to join additional parties with an interest in the takings claim, and (3) was judicially estopped from asserting the takings claim based on representations made during bankruptcy proceedings. Each of these issues speaks directly to NAP's ability to prosecute a claim at all, and, in the absence of abusive litigation practices, each is typically dealt with in the early stages of litigation, not days before trial. Thus, it was just for the district court to impose a case-ending sanction against NAP, which finagled its way deep into the litigation process through misrepresentation and selective disclosure. Moreover, a case-ending sanction is sufficiently related to NAP's abusive conduct because the issues NAP manipulated—standing, failure to join a necessary party, and judicial estoppel—each speak directly to NAP's ability to invoke the judicial process.

Next, we conclude the district court's 13-page order provided a careful and thorough analysis of its rationale for disposing of NAP's claim. Although the district court's order never directly discusses *Young*, its analysis touches all but one of the *Young* factors. *See Young*, 106 Nev. at

93-94, 787 P.2d at 780 (showing that district courts are not required to consider every *Young* factor so long as the case-ending sanction's rationale is carefully and thoughtfully explained).

First, the district court discussed the degree of NAP's willfulness, noting that it "affirmatively misrepresented its ownership" and made misrepresentations "in connection with facts that no party could plausibly claim to have forgotten." Moreover, NAP's failure to disclose documents was an act of "active concealment" that was "intentional or at least highly reckless." In other words, NAP's misrepresentations were non-negligent, and its discovery abuses were willful.

Second, the district court discussed how a lesser sanction would prejudice the County, concluding that the problems NAP caused were "substantial and uncorrectable at this stage of the litigation." Specifically, NAP produced an enormous number of relevant documents "on the virtual eve of trial," thereby placing an onerous and undue burden on the County to review and prepare those documents for trial. And although the district court's sanctions had the effect of ending NAP's case against the County, the district court actually did impose lesser sanctions than outright dismissal. Instead, it deemed evidence related to NAP's misconduct adverse. Thus, the district court properly considered lesser sanctions and found them appropriate.

Third, the district court expressly found that a severe sanction was warranted because NAP's course of conduct represented "a very serious violation of both the letter and spirit of the rules of discovery." According to the district court's analysis, NAP affirmatively misrepresented its standing, induced the district court to grant partial summary judgment based on the misrepresentations, knew the district

court had relied on those misrepresentations, and then failed to disclose documents that would reveal the misrepresentations for 18 months. We believe the district court's conclusion—that NAP's course of conduct warranted severe sanctions—is sound and supported by the record.

Fourth, the district court did not conclude that evidence was irreparably lost. However, the overarching theme of its order is that NAP's misconduct placed an enormous and unfair burden on the County to go through a huge number of newly produced documents before a trial date only two weeks away. In other words, the evidence was not irreparably lost, but NAP's abusive conduct greatly undermined the utility of that evidence by robbing the County of the opportunity to carefully review and consider it before trial.

Fifth, the district court considered and adopted a lesser sanction than outright dismissal, instead opting to deem certain concealed evidence as adverse to NAP's claims. The district court's decision to impose that adverse inference at summary judgment had the effect of resolving three contested issues that NAP spent many months improperly obfuscating—NAP's standing, other parties' potential interest in the litigation, and judicial estoppel—in the County's favor. Although imposing these sanctions effectively ended the case, the adverse inference was still a narrower and lesser sanction than an outright dismissal.

Sixth, the district court's order implicitly considered the judiciary's policy favoring adjudication on the merits. Specifically, the court concluded that by concealing a huge number of documents until just before trial, NAP had irreparably prejudiced the court. In other words, NAP's conduct irreparably prejudiced the district court's ability to perform

its adjudicative duties by misrepresenting facts that had great bearing on the merits of the case.

Seventh, the district court's sanction did not punish NAP for its counsel's misconduct. Indeed, the district court expressly found that "Plaintiff's counsel was not complicit," and NAP "failed to produce those documents despite repeated written requests by its attorney to do so." Therefore, the district court's sanction expressly punishes NAP for its own misconduct.

Finally, the district court's order does not discuss deterring litigation misconduct as a rationale for imposing sanctions against NAP. However, this court does not require district courts to consider every *Young* factor, so long as the district court's analysis is thoughtfully performed. *See Young*, 106 Nev. at 93-94, 787 P.2d at 780.

In sum, we conclude that the district court's sanction order resulted from a written, careful, and thorough examination of the relevant factors, as required by *Young*. *Id.* at 92-93, 787 P.2d at 779-80. Specifically, the district court found NAP's misconduct was non-negligent and willful, irreparably prejudiced the County and court, severely undermined the proceedings, greatly impaired the utility of the withheld evidence, and could not be blamed on NAP's counsel. Moreover, the district court's sanction, although effectively case-ending, was narrower and less severe than an outright dismissal with prejudice.

Thus, having reviewed the district court's order, we conclude it did not abuse its discretion by using its inherent powers to sanction NAP, even under the heightened standard of review for case-ending sanctions.

NAP also argues that the district court abused its discretion by imposing case-ending sanctions without first holding an evidentiary

hearing. We disagree. The record reflects multiple hearings during which NAP—either through its counsel, its partners, or both—presented its contentions regarding whether it misrepresented its standing and committed discovery violations. Therefore, the district court did not abuse its discretion because it provided NAP with more than one meaningful opportunity to present evidence and arguments regarding its misconduct before issuing case-ending sanctions.

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

cc:  Eighth Judicial District Court Dept. 20
     Ara H. Shirinian, Settlement Judge
     Efrem A. Rosenfeld & Associates
     Paul C. Ray, Chtd.
     Mark R. Smith
     Thompson & Heers, PC
     Clark County District Attorney/Civil Division
     Brownstein Hyatt Farber Schreck, LLP/Las Vegas
     Henderson City Attorney
     Kilpatrick, Adler & Bullentini
     Joshua D. Weber
     Reno City Attorney
     Fennemore Craig Jones Vargas/Reno
     Pisanelli Bice, PLLC
     Eighth District Court Clerk