139 Nev., Advance Opinion 60

IN THE SUPREME COURT OF THE STATE OF NEVADA

AVA WHITNEY BLIGE, AN
INDIVIDUAL,
Appellant,
vs.
CHRISTOPHER TERRY, AN
INDIVIDUAL,
Respondent.

No. 85214

FILED

DEC 28 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court amended default judgment in a tort action. Eighth Judicial District Court, Clark County; Susan Johnson, Judge.

*Affirmed.*

Ava Whitney Blige,
Pro Se.

Holland & Hart LLP and Lars K. Evensen, James M. DeVoy, and Jenapher Lin, Las Vegas,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

OPINION

By the Court, STIGLICH, C.J.:

Respondent Christopher Terry sued appellant Ava Blige for damages, asserting various contract-based and tort-based claims centered on allegations that Blige extorted cryptocurrency and money for cars from

23-42079

him under threat of publishing his personal information. As a result of discovery abuses, the district court struck Blige's answer to the complaint and entered a default. At a prove-up hearing, the court concluded that Terry had met his burden to establish a prima facie case on his claims of conversion, unjust enrichment, and intentional infliction of emotional distress, for which he was entitled to proven damages. The court also found that the factual allegations, deemed admitted, supported a claim for extortion, despite extortion not being pleaded as a specific claim in the complaint. It then entered a default judgment awarding damages to account for the emotional distress, moneys spent on cars for Blige, and cryptocurrency transferred to Blige; the judgment was later amended to account for the cryptocurrency's value.

On appeal, Blige argues that the district court erroneously determined that she impliedly consented to being sued under the unpleaded legal theory of extortion. We agree with Blige on this issue and hold that, in default proceedings, a defaulting party cannot be found to have impliedly consented to try claims that were not pleaded in the complaint. Although Blige also challenges the judgment on the conversion, unjust enrichment, and emotional distress claims, we conclude that the district court properly determined that Blige wrongfully dispossessed Terry of the cryptocurrency and money for cars by way of extortive acts under these theories and caused him emotional distress. Accordingly, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

According to the complaint, Terry is the chief executive officer of an Internet company. Blige worked at that company, first as Terry's personal assistant and later as an independent contractor. Their professional association led to a romantic relationship. While they were romantically involved, Terry gave Blige several luxury items, including

cars, cash, and cryptocurrencies. Once the relationship ended, Blige revealed to Terry that she had taken damaging or compromising photographs of him and had made audio and video recordings of his conversations and phone calls. She threatened to publicly release the photographs and recordings unless he complied with her demands for valuables, including cryptocurrency. Terry complied with Blige's demand to transfer Bitcoin to her in hopes that she would not release any of the photographs or recordings. However, after he complied, Blige continued to threaten to publicly release the information unless he met additional demands. To protect himself, Terry transferred more Bitcoin to Blige. Terry eventually made a report of extortion against Blige to the police.

In the underlying civil complaint, Terry sought relief against Blige, alleging, as relevant here, claims for breach of contract, breach of the covenant of good faith and fair dealing, conversion, unjust enrichment, and intentional infliction of emotional distress. Terry also sought declaratory and injunctive relief to prevent Blige from releasing the photographs and recordings. Blige filed an answer, but during discovery, she failed to produce electronically stored information, including the photographs and recordings, and she responded to only one set of discovery requests. As the discovery deadline approached, Blige fired her attorneys, who then filed a motion to withdraw, which the district court granted. The district court ordered Blige, who was proceeding pro se at the time, to respond to all discovery requests by a specified date. Blige failed to respond to the district court's order. Terry then moved for a default as an NRCP 37 sanction for failure to comply with discovery obligations. Blige failed to appear at the October 12, 2021, hearing on the motion, and the district court struck Blige's answer and entered a default, finding that Blige willfully and

repeatedly failed to respond to discovery requests and failed to turn over electronically stored information in violation of court orders.

Blige moved to set aside the default, asserting that she was unaware of the court date. She also filed a supplement to her motion with a supporting declaration in which she asserted that (1) she was unaware of the outstanding discovery requests due to her former counsel's withdrawal; (2) she "did not personally receive any new mail related to any outstanding discovery obligations"; (3) Terry served her with motions and papers by mailing those documents to her parents' house, where she did not live full time; (4) she could not find anything after police had "trashed" the house when executing a warrant; and (5) she was arrested on October 18, 2021, and in jail until around October 23, 2021. The district court denied the motion to set aside the default, noting that the address Blige provided in the motion was identical to the address at which she was served by mail with the order directing her to respond to the discovery requests.

Terry moved for a default judgment, requesting compensatory and punitive damages. At this point, both parties were represented by counsel and appeared at the prove-up hearing, and both Blige and Terry testified. To support his damages, Terry presented screenshots of Bitcoin transfers to Blige and to his car dealer, as well as copies of text messages between him and "Ava," "AvaLavaa," and "Ava 2." Blige objected to the admission of this evidence, but the district court overruled her objection.

The district court granted Terry's motion for a default judgment as to his claims for conversion, unjust enrichment, and intentional infliction of emotional distress, finding that Terry had made a prima facie showing of liability under these theories and had proven resultant damages. Moreover, relying on NRCP 15(b)(2), the district court amended the pleadings to

conform to the evidence and found Blige liable for damages resulting from the tort of extortion, even though that tort was not included as a specified claim in the complaint. The court denied Terry's motion as to all other causes of action asserted and instructed Terry to prove the value of the transferred Bitcoin. Terry subsequently submitted his counsel's affidavit in support of the judgment calculation, which relied on the *Wall Street Journal Pro Central Banking*. Over Blige's objection, the district court accepted Terry's valuation and amended its judgment accordingly. In total, the court awarded Terry $2,631,708.86 in compensatory damages and, finding Blige's conduct malicious, oppressive, and in conscious disregard for the consequences, awarded $2,201,358.44 in punitive damages. Blige appeals.

## DISCUSSION

Blige contends that the district court abused its discretion by denying her motion to set aside the entry of default. Blige also asserts that the district court (1) improperly found that Blige impliedly consented under NRCP 15(b)(2) to trying a claim for the tort of extortion; (2) admitted and considered unauthenticated evidence of damages; and (3) erred in concluding that Terry made prima facie showings that supported liability and resulting damages for conversion, unjust enrichment, and intentional infliction of emotional distress. We address each of Blige's contentions in turn.

*The district court properly denied Blige's motion to set aside the default*

Blige argues that the district court abused its discretion by finding no good cause to set aside the default. Specifically, she contends that she demonstrated that her failure to respond to discovery requests resulted from her being unaware of any such requests or of pending hearings, in part because she was arrested on October 18 and detained for

five days, and in part because she did not otherwise personally receive mailed orders and notices notifying her of obligations in the case. Blige also argues that she could not have complied with directives to provide the electronically stored photographs and recordings because her electronic devices were seized by the police.

We review the district court's decision regarding whether to set aside a default for an abuse of discretion. *Sealed Unit Parts Co. v. Alpha Gamma Chapter of Gamma Phi Beta Sorority Inc. of Reno*, 99 Nev. 641, 643, 668 P.2d 288, 289 (1983), *overruled on other grounds by Epstein v. Epstein*, 113 Nev. 1401, 1405, 950 P.2d 771, 773 (1997). NRCP 55(c) provides that a district court may set aside a default for "good cause." In asking to set aside a default for good cause, "the moving party must show some excuse for its failure to answer or otherwise defend." *Sealed Unit Parts*, 99 Nev. at 643, 668 P.2d at 289. The "good cause" standard includes NRCP 60(b)(1) grounds for relief, including "mistake, inadvertence, surprise or excusable neglect." *See Intermountain Lumber & Builders Supply, Inc. v. Glens Falls Ins. Co.*, 83 Nev. 126, 129, 424 P.2d 884, 886 (1967).

The record on appeal undermines Blige's claim that she was unaware of the outstanding discovery requests and the hearing date. Blige stated in her declaration in support of the motion to set aside that she reviewed the outstanding requests and provided responses and documentation for the requests to her former attorneys on July 28, 2021. Although she claimed that she believed her former attorneys had turned over those responses to Terry, her former attorneys' sworn declaration in support of their motion to withdraw as counsel confirms that Blige fired her former attorneys on that same day, July 28, 2021, and the attorney-client relationship was irretrievably broken to the extent that counsel had to have

SUPREME COURT
OF
NEVADA

(O) 1947A

6

Blige escorted out of the law offices by police. Thus, the record contradicts Blige's representations that she reasonably believed the requests were no longer outstanding because former counsel responded to them on her behalf.

Further, the address where Blige was served the order directing her to respond to discovery and the NRCP 37 motion, in which Terry sought an order striking Blige's answer to the complaint and a default, was the same address that Blige used in her motion to set aside. *See Durango Fire Prot., Inc. v. Troncoso*, 120 Nev. 658, 663, 98 P.3d 691, 694 (2004) (declining to set aside a judgment on excusable neglect grounds after rejecting a party's claimed lack of knowledge of a scheduled hearing when notice of the hearing was mailed to the party's address of record). Moreover, a copy of the NRCP 37 motion was served on Blige by email, and Blige did not refute that opposing counsel had the correct email addresses.

Similarly, the district court was within its discretion to find that Blige's arrest on October 18 does not constitute good cause for why she did not attend the October 12 hearing on the NRCP 37 motion. Blige's argument that she could not produce the photographs and recordings because her devices were seized also fails, given that she did not timely claim that those materials were unavailable to her. Therefore, because Blige failed to demonstrate mistake, surprise, excusable neglect, inadvertence, or other excuse that amounted to good cause, we perceive no abuse of discretion in the district court's denial of her motion to set aside the default.

*Claims that were not pleaded cannot be tried by implied consent against a defaulting party*

Although Terry contends the argument was waived, Blige permissibly argues on appeal that the district court erred when it sua sponte amended the pleadings to include an unpleaded claim of extortion.

SUPREME COURT
OF
NEVADA

(O) 1947A

Blige argues the district court erred by relying on NRCP 15(b)(2) to find that she and Terry impliedly consented to trying extortion as a tort claim because Nevada does not recognize a tort of extortion. We need not resolve whether a party may sue for an extortion tort in Nevada, however, because we conclude that a defaulting party cannot be found to have impliedly consented to try a claim under NRCP 15(b)(2) if the claim was not pleaded in the complaint, even for a clearly established cause of action.

We review a district court's legal conclusions regarding court rules for an abuse of discretion. *Casey v. Wells Fargo Bank, N.A.*, 128 Nev. 713, 715, 290 P.3d 265, 267 (2012). NRCP 15(b)(2) provides that when an issue that is not raised in the complaint is "tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." An amendment by implied consent is permissible "if prejudice does not result." *Schwartz v. Schwartz*, 95 Nev. 202, 205, 591 P.2d 1137, 1139 (1979) (internal quotation marks omitted).

After default, when a plaintiff's claim is for an amount of damages that is uncertain, the plaintiff must apply to the district court for a default judgment. NRCP 55(b)(2). Further, if the defendant has appeared, the defendant must be served with written notice at least seven days before the district court conducts a prove-up hearing on the default judgment. *Id.* The purpose of this prove-up hearing is limited to determining the amount of damages, conducting an accounting, establishing the truth of any allegation by evidence, and investigating any other matter. *Id.*

Generally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." NRCP 54(c). *See generally Mitchell v. Mitchell*, 28 Nev. 110, 79 P. 50, 50 (1904) (concluding

SUPREME COURT
OF
NEVADA

(0) 1947A

in default "the relief granted to the plaintiff, if there be no answer, shall not exceed that which . . . [was] demanded in [the] complaint"). However, we have held that when a defaulting party has failed to comply with a discovery order, a plaintiff can amend their complaint to conform with the evidence presented at the prove-up hearing to support a damages award. *Hamlett v. Reynolds*, 114 Nev. 863, 866, 963 P.2d 457, 459 (1998); *see also Kelly Broad. Co. v. Sovereign Broad., Inc.*, 96 Nev. 188, 192-93, 606 P.2d 1089, 1092 (1980) (concluding plaintiff could amend his prayer for relief to conform to the trial evidence for additional amounts that were not pleaded when the defaulting party failed to comply with a court order), *superseded by statute on other grounds as recognized in Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 741 n.39, 192 P.3d 243, 254 n.39 (2008). We have not addressed whether a defaulting party may impliedly consent to an unpleaded *claim* being tried against them in default proceedings.

The Alabama Court of Appeals has addressed the issue in an appeal from a default divorce decree. *Maxwell v. Maxwell*, 188 So. 3d 695 (Ala. Civ. App. 2015). In that case, after the wife defaulted on the divorce claims regarding property distribution, the husband claimed at the prove-up hearing that he should be awarded attorney fees, although he did not plead for such in his complaint. *Id.* at 696. The final judgment included a $5000 award for the unpleaded request for attorney fees. *Id.* When the wife appealed, the husband argued that the claim was tried by implied consent at the divorce proceedings under Alabama Rules of Civil Procedure 15(b) because the issue was raised at trial when his attorney asked if he was requesting attorney fees and because the wife, who was not present at trial, failed to object. *Id.* at 697. In rejecting that argument, the court noted that an issue cannot be tried by implied consent if the opposing party is absent

from the proceedings and that "[a] party should have the right to assume that a court's judgment following his default will not extend beyond the issues presented by the complaint." *Id.* (internal quotation marks omitted). *Cf. Matsushima v. Rego*, 696 P.2d 843, 845-46 (Haw. 1985) (concluding under Hawaii's Rule 54(c) that judgment as to quieting title was void because it was not requested in the pleadings); *In re Marriage of Hughes*, 116 P.3d 1042, 1043, 1046 (Wash. Ct. App. 2005) (internal quotation marks omitted) (determining under Washington's Rule 54(c) that "a court has no jurisdiction to grant relief beyond that sought in the complaint" and must "vacate the default to the extent it differed from the original [complaint]" when the plaintiff alleged she was not pregnant yet changed her pregnancy status and denied her husband's paternity in her default dissolution decree).

Unlike the wife in *Maxwell*, Blige was present at the prove-up hearing. But the defaulting party's presence at a damages prove-up hearing is inapposite to a determination of their liability on a claim that was not pleaded and on which they therefore could not have defaulted. A defaulting party who has made an appearance in the case receives notice of the prove-up hearing. At that point, the defaulting party can assess the claims pleaded against them and the potential damages arising from those claims. On that basis, they may decide not to attend the hearing to contest those damages. A default judgment that reflects those claims and related damages will be entered against them as a result. Likewise, a defaulting party who attends the hearing receives notice of the claims pleaded against them and that the damages arising from those claims will be tried at the prove-up hearing. Therefore, the default judgment entered against a defaulting party who attends the hearing must similarly be limited to

SUPREME COURT
OF
NEVADA

(O) 1947A

damages for the claims pleaded against them. In this regard, we agree with the Alabama appellate court and conclude that, in default proceedings, a defaulting party cannot be found to have impliedly consented to try and be held liable for claims that were not pleaded in the complaint. Accordingly, the district court erred by finding in the default judgment that Blige impliedly consented to try the unpleaded tort of extortion.

*The district court did not err in admitting evidence*

Blige argues that the district court abused its discretion by admitting evidence related to Bitcoin transfers to Blige and to Terry's car dealer, text messages, and Bitcoin valuations. We review a district court's decision to admit evidence for an abuse of discretion. *Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 492, 117 P.3d 219, 226 (2005). Nevada's evidence code provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence or other showing sufficient to support a finding that the matter in question is what the proponent claims." NRS 52.015(1). "The testimony of a witness is sufficient for authentication or identification if the witness has personal knowledge that a matter is what it is claimed to be." NRS 52.025.

*The district court did not abuse its discretion in admitting evidence related to Bitcoin transfers and text messages*

Blige argues that Terry failed to authenticate screenshots of Bitcoin transfers to her and to Terry's car dealer, as well as copies of text messages between Terry and "Ava," "AvaLavaa," and "Ava 2." When a text message's admissibility is objected to on authentication grounds, the proponent of such evidence must explain the purpose for which they are offering the text message and "provide sufficient direct or circumstantial corroborating evidence of [its] authorship." *Rodriguez v. State*, 128 Nev. 155, 162, 273 P.3d 845, 849 (2012) (internal citation omitted). "Thus, some

SUPREME COURT
OF
NEVADA

11

(O) 1947A


additional evidence, which tends to corroborate the identity of the sender, is required." *Id.* at 161, 273 P.3d at 849 (internal quotation marks omitted). This evidence "may include the context or content of the messages themselves." *Id.*

Regarding the Bitcoin transfers, Terry testified that he took the screenshots showing the transfers on his phone. He testified that the screenshots depict Bitcoin transactions from his wallet to Blige. Terry testified that all the transactions at issue were transfers to Blige. Similarly, Terry testified that the screenshot exhibit presented in the prove-up hearing depicted a transfer of funds to his car dealer to purchase cars for Blige. This corroboration was sufficient for the district court to determine that Terry authenticated the screenshots of the transfers to Blige and to his car dealer.

As to the text messages, Terry testified that "Ava," "AvaLavaa," and "Ava 2" were all names attached to Blige's phones. He testified that Blige had several phone numbers and that she occasionally spoke on the phone with him using the Ava 2 number. Terry also identified the general time period when the text messages were sent, which was during the alleged extortion. Even Blige testified during the hearing that she was the recipient and Terry was the sender of one of the messages. Terry offered copies of the text messages to show that Blige threatened him with exposure of personal information. Further, the contents of the messages were consistent with Blige and Terry being in a relationship. One of the text messages included a photograph of Blige and Terry posed together while traveling in Europe. In others, the sender "Ava 2" referred to Terry as "baby" or "love." Thus, the content of the text messages also provides circumstantial evidence that "Ava," "AvaLavaa," and "Ava 2" are Blige. *Rodriguez*, 128 Nev. at 162, 273




P.3d at 849. Accordingly, the district court properly determined that Terry authenticated the text messages and acted within its discretion by admitting and considering the screenshots of the Bitcoin transfers and the text messages.

Blige also contends that admitting the text messages violated the best evidence rule. Terry offered the screenshots to prove the content of the text messages, which show that Blige threatened to publish photos and recordings of him. Terry's screenshots satisfy the best evidence rule because Blige has not raised a genuine question regarding the authenticity of the original text messages or shown that it would be unfair to use duplicates, i.e., screenshots of the original text messages. NRS 52.245(1) (addressing best evidence requirements). Blige provides no support that it was unfair to use the screenshots in lieu of the originals or that she was not the text messages' author. *Id.* Accordingly, we conclude the screenshots did not violate the best evidence rule.

*The district court did not abuse its discretion by admitting the evidence related to the Bitcoin valuations*

Blige contends that the district court erred in accepting Terry's valuation of the Bitcoin transferred to Blige from May 17, 2019, to October 2020. She argues that Terry failed to provide authority to support his calculation and that he did not establish the *Wall Street Journal* as a reliable source for cryptocurrency valuations.

This court reviews a district court's calculation of damages for an abuse of discretion. *Flamingo Realty, Inc. v. Midwest Dev., Inc.*, 110 Nev. 984, 987, 879 P.2d 69, 71 (1994). NRS 47.130(2)(b) provides that a court may take judicial notice of facts "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned, so that the fact is not subject to reasonable dispute."

 

As evidence of the Bitcoins' value during the relevant period, Terry relied on the *Wall Street Journal Pro Central Banking*'s historical Bitcoin price for each corresponding date of transfer. This process involved taking the average of the "open amount, high, low, and close amount" of the Bitcoin value on the date of transfer and multiplying it by the amount of Bitcoin transferred. The district court found that the *Wall Street Journal Pro Central Banking* was a legitimate source and took judicial notice of its valuations. *See Fierle v. Perez*, 125 Nev. 728, 737 n.6, 219 P.3d 906, 912 n.6 (2009) (observing that courts may take judicial notice of facts "capable of verification from a reliable source"), *as modified* (Dec. 16, 2009), *overruled on other grounds by Egan v. Chambers*, 129 Nev. 239, 240-41, 299 P.3d 364, 365 (2013). Blige does not dispute the numbers or provide any reason why the *Wall Street Journal* did not reflect accurate pricing. Thus, we conclude that Blige has not shown that the district court abused its discretion by taking judicial notice of the *Wall Street Journal* price records to calculate the Bitcoin valuation.

*Terry made prima facie showings of conversion, unjust enrichment, and intentional infliction of emotional distress to support the damages awards*

Blige argues that the district court impermissibly awarded Terry damages for conversion, unjust enrichment, and intentional infliction of emotional distress. Specifically, Blige contends damages were impermissibly awarded because Terry failed to make prima facie showings of conversion, as he did not make a demand, and of intentional infliction of emotional distress, as he only experienced stress.

A district court's decision to enter a default judgment as a discovery sanction is reviewed for abuse of discretion. *Kelly*, 96 Nev. at 192, 606 P.2d at 1092. When default judgment is entered "as a discovery sanction, the nonoffending party need only establish a prima facie case."

 

*Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 94, 787 P.2d 777, 781 (1990). To do so, the nonoffending party must present sufficient evidence "for each cause of action as well as demonstrat[e] by substantial evidence that damages are attributable to each claim" and their amounts are proven. *Foster v. Dingwall*, 126 Nev. 56, 60, 68, 227 P.3d 1042, 1045, 1050 (2010); *see Weddell v. H2O, Inc.*, 128 Nev. 94, 101, 271 P.3d 743, 748 (2012) ("Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." (quoting *Whitemaine v. Aniskovich*, 124 Nev. 302, 308, 183 P.3d 137, 141 (2008))), *abrogated on other grounds by Tahican, LLC v. Eighth Judicial Dist. Court*, 139 Nev., Adv. Op. 2, 523 P.3d 550, 554 (2023). Further, the nonoffending party must "show that the amount of damages sought is . . . designed to either compensate the nonoffending party or punish the offending party." *Foster*, 126 Nev. at 64, 227 P.3d at 1047. During the prove-up hearing, the district court considers the allegations in the pleadings deemed admitted in determining "whether the nonoffending party has established a prima facie case for liability." *Id.* at 67, 227 P.3d at 1049-50.

*The transfer of property under duress can constitute conversion, and in such cases, demand is not required*

Blige argues that Terry did not make a prima facie case for conversion because he did not show that he demanded the return of his property or that such demand would be futile. Nevada appellate courts have yet to address whether a party may successfully assert a claim for conversion when that party turns over property to another based on an arrangement that inherently involves duress, and if so, whether a demand is required.

In *Wantz v. Redfield*, we defined conversion "as a distinct act of dominion wrongfully exerted over another's personal property in denial of,

SUPREME COURT
OF
NEVADA

(O) 1947A

or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." 74 Nev. 196, 198, 326 P.2d 413, 414 (1958). Conversion does not require a manual or physical taking of property. *Bader v. Cerri*, 96 Nev. 352, 357 n.1, 609 P.2d 314, 317 n.1 (1980), *overruled in part on other grounds by Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 608, 5 P.3d 1043, 1050 (2000). Indeed, tangible and intangible property alike can be converted. *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 904, 193 P.3d 536, 538-39 (2008). The effect of the act is critical to conversion, not the converter's intent, and thus conversion is sufficiently shown when an owner is deprived of their property by the wrongful act of another who assumes dominion over the property. *See Studebaker Bros. Co. of Utah v. Witcher*, 44 Nev. 442, 462, 195 P. 334, 340 (1921). However, conversion must "be essentially tortious," meaning it must be an unlawful act. *Wantz*, 74 Nev. at 198, 326 P.2d at 414 (internal quotation marks omitted).

To that end, other state courts have recognized that conversion includes takings induced by duress. For example, the Supreme Court of Oregon stated, "[i]t is a conversion to obtain chattel property from another by duress." *Gowin v. Heider*, 386 P.2d 1, 18 (Or. 1963). The court affirmed on rehearing that it would be "an unlawful interference with the true owner's dominion" for a wrongdoer to take possession of a motor vehicle by using duress to obtain a power of attorney from the true owner. *Gowin v. Heider*, 391 P.2d 630, 636 (Or. 1964). Similarly, the highest court of Maryland held that "conversion may consist of a wrongful, tortious or unlawful taking of property from the possession of another by theft, trespass, duress, or fraud and without his consent or approbation, either express or implied." *Saunders v. Mullinix*, 72 A.2d 720, 722 (Md. 1950).

And the Supreme Court of Mississippi has concluded that there is no liability for conversion if possession was assented to, "unless the assent was obtained by duress or from one lacking capacity to consent or was obtained or acted upon fraudulently." *Latimer v. Stubbs*, 161 So. 869, 869 (Miss. 1935) (internal quotation marks omitted); *see also* Restatement (Second) of Torts § 221(b) (Am. Law Inst. 1965) (recognizing that a conversion may be committed by intentionally "obtaining possession of a chattel from another by fraud or duress"); *id.* § 223(a) ("A conversion may be committed by intentionally . . . dispossessing another of a chattel as stated in §§ 221 and 222 . . . .").

We agree with these courts. Moreover, we note that, while conversion may be established by the refusal of a demand for the property, *Ward v. Carson River Wood Co.*, 13 Nev. 44, 61 (1878), *superseded by statute on other grounds as stated in Menteberry v. Giacometto*, 51 Nev. 7, 12, 267 P. 49, 50 (1928), a demand for return of converted property is not required when the "holder [of the property] asserts ownership," *W. Indus., Inc. v. Gen. Ins. Co.*, 91 Nev. 222, 230, 533 P.2d 473, 478 (1975); *see also Ward*, 13 Nev. at 61-62 ("When there has been an actual conversion, no demand is necessary in order to sustain the action of trover."). Thus, when property is unlawfully obtained through duress, no demand is required.

Here, Terry alleged that he transferred the Bitcoin and money for cars to Blige under duress, to protect himself, because Blige was threatening to publicly release his highly personal information unless he complied with her demands. Blige's threats were thus wrongful acts used to obtain dominion over Terry's personal property rights. To compensate Terry, the district court awarded him the value of the Bitcoin and the cash used to purchase cars transferred to Blige. Relatedly, the district court

awarded Terry the value of the converted Bitcoin as punitive damages to punish Blige. Terry properly supported the calculation of the converted Bitcoin and cash with exhibits and the historical Bitcoin price records. Accordingly, we conclude that the district court did not abuse its discretion by finding that Terry established a prima facie case for conversion and awarding damages.[1]

*The district court properly awarded damages for Terry's claim of intentional infliction of emotional distress*

Blige argues that Terry failed to establish a prima facie showing of intentional infliction of emotional distress because Terry's stress was insufficient to support severe or extreme emotional distress. Intentional infliction of emotional distress has four elements: "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 114 Nev. 1291, 1299-1300, 970 P.2d 571, 577 (1998). The district court found that the evidence, including the Bitcoin transfers and the text messages between Terry and Blige, was sufficient to establish that Blige's conduct was extreme and outrageous and that she had intent to cause emotional distress or recklessly disregarded the likelihood of doing so. The district court also found that Blige's conduct actually caused Terry extreme or severe emotional distress.

We conclude that substantial evidence supports these findings. Specifically, with respect to the third element, Terry testified he was

---

[1]We do not reach Blige's challenge to unjust enrichment because it was not cogently argued. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006).

stressed, and he texted Blige that he had trouble sleeping, had to worry every second, and was afraid. We perceive no error in the district court's conclusion that Blige's conduct caused Terry to succumb to numerous extortions, resulting in him transferring Bitcoin to Blige on 70 occasions to protect himself. Terry's compliance under threat with Blige's outrageous demands for numerous Bitcoin transfers are objectively verifiable indicia that he suffered extreme or severe emotional distress, and Blige's outrageous conduct was so extreme that Terry was not required to show more. *See Miller*, 114 Nev. at 1300, 970 P.2d at 577 (concluding district court did not err in rejecting claim of intentional infliction of emotional distress when the plaintiff "presented no objectively verifiable indicia of the severity of his emotional distress"); *Franchise Tax Bd. of State of Cal. v. Hyatt*, 133 Nev. 826, 855, 407 P.3d 717, 742 (2017) (concluding when "facts support the conclusion that th[e] . . . [conduct] is at the more extreme end of the scale . . . less in the way of proof as to emotional distress suffered . . . is necessary"), *rev'd and remanded on other grounds sub nom. Franchise Tax Bd. of Cal. v. Hyatt*, ___ U.S. ___, 139 S. Ct. 1485 (2019). We conclude the district court was in the best position to evaluate the testimony and the veracity of the manifestations of Terry's distress. To compensate Terry, the district court awarded him $70,000. The award was attributable to Terry's claim for intentional infliction of emotional distress because it was for $1000 for each of the 70 times Blige obtained Bitcoin from Terry by threatening him. Thus, the district court found each independent threat sufficiently extreme or outrageous to merit an award of $1000. We determine that substantial evidence supports the district court's finding that Terry established a prima facie case for intentional infliction of

 

emotional distress, and we perceive no error in its resulting award of damages.[2]

## CONCLUSION

Because a party cannot default on claims that were not pleaded in the complaint, the defaulting party cannot be found to have impliedly consented to try claims unless the plaintiff included the claims in their pleadings. Regarding the district court's conclusion that the facts supported Terry's claim for conversion, we agree, because although Terry transferred the cryptocurrencies and money for cars in exchange for Blige's promise not to reveal personal information about Terry, that arrangement inherently involved duress. We conclude that when a party uses duress to obtain wrongful dominion over another's property, that act of duress properly supports a claim for conversion under Nevada law. As to the remaining issues, we conclude that the district court acted within its discretion by denying the motion to set aside the default and by admitting the evidence that Blige challenged. It likewise properly exercised its discretion by awarding damages based on its findings that Terry made prima facie showings of conversion, unjust enrichment, and intentional infliction of emotional distress. Thus, we affirm the district court's judgment as to those claims. We conclude, however, that the district court erred by finding that Blige impliedly consented to try the claim of extortion when it was not

---

[2]We have considered Blige's remaining arguments, including her assertions that the district court mistakenly stated that discovery abuses had gone on for over a year, that the NRCP 37 sanction was improper, that some of the text messages could have been sent outside of the relevant time period and therefore cannot prove threats during that period, that the district court erred by taking judicial notice of DMV records, and that Terry failed to show Blige caused his stroke, and we find no errors.

pleaded in the complaint. Although the claim for extortion was not properly added to the complaint, the district court's award pertaining to that claim is otherwise supported under theories of conversion and unjust enrichment. Further, the award for intentional infliction of emotional distress is likewise appropriate. Accordingly, we affirm.

_____, C.J.
Stiglich

We concur:

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Herndon

_____, J.
Lee

_____, J.
Parraguirre

_____, J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A