141 Nev., Advance Opinion 6

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| OMAR TALLEY,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 88110 |



FILED

DEC 04 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of murder with the use of a deadly weapon and attempted murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Jacqueline M. Bluth, Judge.

*Affirmed.*

Law Office of Christopher R. Oram and Christopher R. Oram, Las Vegas, for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and John Afshar, Chief Deputy District Attorney, Clark County, for Respondent.

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

*OPINION*

By the Court, BELL, J.:

Authentication of evidence provides an essential safeguard to protect the fairness and accuracy of our legal process. Before evidence may

25-52793

be introduced in court, the evidence must be proven to be what its proponent claims the evidence to be. With new technology making it easier to alter content, authentication is more important than ever. To authenticate text messages, the party offering the messages as evidence must explain the purpose for which the messages are presented and establish the identity of the sender. Establishing the identity of the sender may be accomplished through direct or circumstantial evidence. Evidence must be authenticated before a court may address other evidentiary concerns, such as relevance or hearsay.

In this case, over Appellant Omar Talley's objection, the district court permitted the State to introduce text messages under the state-of-mind exception to the hearsay rule. The authentication of the messages was not addressed, and the focus was placed on the applicability of the hearsay exception instead. We conclude the court abused its discretion in admitting text messages that had not been properly authenticated. Even so, considering the overwhelming evidence of guilt presented at trial, we conclude the error was harmless and affirm Talley's conviction.

## FACTS AND PROCEDURAL HISTORY

On the night of February 19, 2016, Jerraud Jackson, Melissa Mendoza, and Jennifer Chicas were visiting Las Vegas to attend a graduation party. The three spent the evening at Planet Hollywood on the Strip. As the night wound down, the group headed to the parking garage, where they encountered some men who began yelling derogatory slurs toward Mendoza and Chicas. Jackson, offended by the remarks, confronted the men, and a physical altercation broke out. Omar Talley, who also was nearby, joined the fight.

After hotel security broke up the fight, Jackson, Mendoza, and Chicas returned to their vehicle and began driving away. Jackson, injured

in the fight, lay in the back seat of the car. Talley began following in a dark gray Toyota Camry that had been rented by his girlfriend, Robyn Brown. Before the group exited the garage, Talley exited the Camry and pointed a gun at the group. Mendoza drove away, but Talley reentered the Camry and pursued them down the street. At trial, Talley testified that a now-deceased acquaintance was actually the person who reentered the car and pursued the group.

Being pursued by the Camry, Mendoza unintentionally drove into a cul-de-sac. While she attempted to turn around, the driver of the Camry shot three rounds into the vehicle. The Camry continued to chase the group as Mendoza drove away. As Mendoza pulled over to the side of the road, Chicas got out of the car to escape. The Camry pulled up alongside the vehicle, and its driver fired six more shots, hitting Mendoza, Chicas, and Jackson.

The police arrived soon after, and officers attempted to administer CPR to Mendoza, who was declared dead at the scene. Chicas died from her wounds shortly thereafter. Jackson, despite his injuries, survived and provided an account of the events to law enforcement.

Evidence gathered from the scene included multiple .40-caliber Smith & Wesson cartridge cases. Three casings were found on the cul-de-sac, and six casings were found where the final shooting occurred. The bullets that killed Mendoza and Chicas matched the casings found at the crime scene. Investigators also recovered similar bullets from the victims' car.

The evidence recovered strongly indicated Talley's involvement in the shooting. The Camry was later discovered severely burned, although Talley was in custody at the time. Talley's phone records placed him at the

scenes of both shootings. When initially interviewed, Talley admitted to being present at Planet Hollywood and pointing a BB gun at the other car while in the parking garage. Talley further confessed he drove the Camry outside of the garage but denied any involvement in the shooting. Multiple witnesses, including Jackson, confirmed seeing Talley in the Camry chasing the victims.

After an eight-day trial, a jury convicted Talley of two counts of murder with the use of a deadly weapon and one count of attempted murder with the use of a deadly weapon. The parties waived the penalty phase, and the district court sentenced Talley to serve an aggregate prison term of life without the possibility of parole. Talley now appeals the conviction.

## DISCUSSION

On appeal, Talley first contends that the evidence presented at trial was insufficient to support the conviction. Second, Talley claims the prosecutor committed misconduct by shifting the burden of proof. Third, Talley asserts the prosecutor committed misconduct by commenting on Talley's right to remain silent. Fourth, Talley maintains that the district court abused its discretion by overruling his objections and admitting text messages, which he contends were not properly authenticated. Fifth, Talley objects to the admission of specific autopsy photographs. Sixth, Talley argues that the district court abused its discretion at sentencing. Seventh, Talley challenges the court's jury instructions on implied malice, premeditation, reasonable doubt, and the principle of equal and exact justice. Finally, Talley posits that the cumulative effect of error below violated his due process right to a fair trial. We examine each contention in turn.

*Talley fails to adequately support his argument regarding the insufficiency of the evidence*

Talley avers there was insufficient evidence to convict him of the charges. "[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). In reviewing the sufficiency of the evidence, this court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998) (internal quotation marks omitted).

As the State correctly points out, Talley fails to provide any citations to the record for his claims. A party seeking review bears responsibility to cogently argue and present relevant authority to support their assertions. *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987). Not only did Talley fail to meet this burden, but overwhelming evidence supported the jury's verdict. Security footage captured Talley in the Planet Hollywood parking garage as he engaged in fighting with Jackson, and the security guards from Planet Hollywood identified Talley as a participant. Additional footage captured Talley driving the gray Toyota Camry and following the victims out of the garage. Later footage showed Talley exiting his vehicle and pointing a firearm at the victims. Surveillance from multiple Strip hotel locations captured the Camry trailing the victims. Talley's location data from his phone placed him at the scene of the final shooting. Jackson identified Talley as the shooter in open court. Investigators also found a voice-note on Talley's phone that he left to himself bragging about being the top news story. Given the evidence presented at trial, we conclude sufficient evidence supported the jury's

Supreme Court
OF
Nevada

(O) 1947A

conviction. *See* NRS 200.010; NRS 200.030(1)(a); NRS 193.165(6); NRS 193.153(1)(a)(1).

*The State did not improperly shift the burden of proof*

Talley asserts the State unconstitutionally shifted the burden of proof by suggesting Talley had to persuade all twelve jurors of his innocence. The State replies that Talley misquotes the record. In reviewing claims of prosecutorial misconduct, this court "determine[s] whether the prosecutor's conduct was improper" and, if so, "whether the improper conduct warrants reversal." *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). Based on our review of the record, we discern no misconduct.

Talley challenges the prosecution's question, "You understand you have to convince 12 of these jurors[?]" arguing it unconstitutionally shifted the burden of proof. The record shows the prosecution was unable to finish its question before Talley's objection was sustained, and as a result, we find no error. Further, any potential error was cured because both the prosecution and the district court repeatedly reminded the jury of the correct burden of proof. Additionally, Talley claims that the prosecution suggested he had to provide video evidence of his version of events. While "it is generally improper for a prosecutor to comment on the defense's failure to produce evidence or call witnesses," *Whitney v. State*, 112 Nev. 499, 502, 915 P.2d 881, 883 (1996), it is permissible for the prosecutor to comment on the defendant's failure to substantiate his theory of the case with supporting evidence, *Evans v. State*, 117 Nev. 609, 631, 28 P.3d 498, 513 (2001). Here, the prosecutor was not commenting on the failure to produce evidence to shift the prosecution's burden but rather pointed out the absence of evidence to substantiate Talley's claims. Therefore, we conclude that Talley's contention is without merit.

*The State did not improperly comment on Talley's right to remain silent*

Talley argues the State impermissibly commented about his right to remain silent. During cross-examination of Talley, the prosecutor began asking, "so now, seven-plus years, you are telling—," but Talley immediately objected and requested a bench conference. On appeal, Talley relies on *Murray v. State*, where the prosecution improperly referenced the defendants' silence and suggested it was evidence of guilt. 113 Nev. 11, 930 P.2d 121 (1997). That case is materially different. In *Murray*, the defendants remained silent following arrest. *Id.* at 17, 930 P.2d at 125. Here, Talley did not remain silent after his arrest. Talley voluntarily provided a statement to law enforcement, which the prosecution admitted as evidence. *Franklin v. State*, 96 Nev. 417, 421, 610 P.2d 732, 734 (1980) ("A confession is admissible as evidence only if it is made freely, voluntarily, and without compulsion or inducement."). Talley's trial testimony contradicted his statement made to police in 2016, and the State impeached his testimony with prior inconsistent statements. Therefore, we conclude that Talley's contention is without merit.

*The State failed to properly authenticate text messages*

Talley further avers the State failed to establish the authenticity of certain text messages allegedly sent to him by his girlfriend, Robyn Brown, and Talley was denied an opportunity to confront Brown because the messages were introduced through a law enforcement officer. During the trial, the prosecution offered Exhibits 496 and 506. Exhibit 496 contains two text messages received on Talley's phone reading, "Keep fucking playing with me and I'll report the car missing," and "You got me too fucking mad right now." Exhibit 506 is a message that reads, "If my check engine light don't get off so I can get my car smugged, we gonna be carpooling again honeybuns." Over Talley's objection raising hearsay and

authentication concerns, the district court admitted Exhibit 496 as a statement of a coconspirator and admitted Exhibit 506 under a declarant's state-of-mind exception because the State offered the messages to prove that Talley had possession of Brown's rental vehicle. "We review a district court's decision to admit or exclude evidence for an abuse of discretion." *Ramet v. State*, 125 Nev. 195, 198, 209 P.3d 268, 269 (2009).

The State now advances three theories for admission of the text messages. First, the State asserts the author of the messages does not matter because Talley did not respond to the messages, and thus, the messages were properly admitted as adoptive admissions under NRS 51.035(3)(b). Second, the State claims the messages were not offered for the truth of the matter asserted; rather, their purpose was to show Talley had possession of Brown's rental vehicle. Third, the State argues the messages were not testimonial; therefore, there was no violation of the Confrontation Clause. U.S. Const. amend. VI.

None of the State's theories address authentication. The State conflates two distinct inquiries: authentication and hearsay. Authentication concerns whether "the matter in question is what its proponent claims" it to be. NRS 52.015(1). Hearsay concerns whether an out-of-court statement may be admitted for its truth. NRS 51.035. Even if a text message fits within a hearsay exception, the message still must be properly authenticated. Evidence law follows a sequence. Among many admissibility questions, a court must first determine the authenticity of a proposed piece of evidence and then proceed to assess other evidentiary concerns, such as relevance and hearsay. NRS 52.015(1) ("The requirement of authentication or identification [i]s a condition precedent to admissibility . . . .").

Authentication is "satisfied by evidence or other showing sufficient to support a finding that the matter in question is what its proponent claims." *Id.* This principle is foundational to the admissibility of evidence, as evidence cannot be deemed relevant if it is not what it is purported to be. "[E]stablishing the identity of the author of a text message through the use of corroborating evidence is critical to satisfying the authentication requirement for admissibility." *Rodriguez v. State*, 128 Nev. 155, 162, 273 P.3d 845, 849 (2012).

Authentication of text messages requires more than just a showing that a message originated from a particular cell phone. *Id.* at 161, 273 P.3d at 849.

> [A] person cannot be identified as the author of a text message based solely on evidence that the message was sent from a cellular phone bearing the telephone number assigned to that person because "cellular telephones are not always exclusively used by the person to whom the phone number is assigned."

*Id.* (quoting *Commonwealth v. Koch*, 39 A.3d 996, 1005 (Pa. Super. Ct. 2011)).

A text message may be authenticated in at least two ways. First, through the testimony of a witness with personal knowledge, such as the sender or someone who personally witnessed the message being sent. *See* NRS 52.025 ("The testimony of a witness is sufficient for authentication or identification if the witness has personal knowledge that a matter is what it is claimed to be."). Second, by using circumstantial evidence to establish the sender's identity, such as the content or other contextual details of the messages or details that would only be known by a few people, including the defendant. *Rodriguez*, 128 Nev. at 161, 273 P.3d at 849.

In addition to corroborating authorship, when a text message's admissibility is objected to on authentication grounds, the party seeking to introduce the evidence must also "explain the purpose for which they are offering the text message." *Blige v. Terry*, 139 Nev. 607, 614, 540 P.3d 421, 429 (2023). The proponent of the evidence "control[s] what will be required to satisfy the authentication requirement by deciding what he offers it to prove." *Rodriguez*, 128 Nev. at 161, 273 P.3d at 848-49 (internal quotation marks omitted).

Here, the prosecution focused only on who received the messages and the purpose of offering the messages, which was to show Talley had possession of the Camry. The prosecution failed to properly authenticate the messages by providing evidence of authorship beyond the text message coming from Brown's number. The text messages themselves lack sufficient specificity to indicate that Brown sent them. The statements in the text messages also fail to clearly establish possession of the Camry and seem to be of limited, if any, relevance without additional context, that was not provided by the testifying officer.

Despite the lack of foundation, the messages were admitted under certain hearsay exceptions that do not apply under the circumstances presented here. First, the adoptive-admission exception does not apply. Simply failing to respond to a message does not, as the State contends, create an adoptive admission. An adoptive admission requires that "an incriminating statement [be] heard and understood by [the] accused, and [that the] response justifies an inference that [the statement was] agreed [to] or adopted." *Harrison v. State*, 96 Nev. 347, 349, 608 P.2d 1107, 1108 (1980). Absent any evidence that Talley received, understood, and intended

(O) 1947A

to act upon the messages, the adoptive-admission exception does not apply. *Rodriguez*, 128 Nev. at 161, 273 P.3d at 849.

Second, the state-of-mind exception to the hearsay rule applies to a declarant: here, purportedly Brown. Brown's state of mind is unrelated to Talley's intent or actions and would not support admission of the texts, even if it had been established that Brown sent them. Without evidence connecting the text messages to Brown, either through direct testimony or corroborating circumstantial evidence, the admission of these texts was error. Because the messages were not sufficiently authenticated, the district court abused its discretion in admitting the messages.

Nonetheless, we conclude under the circumstances of this case that the district court's error in admitting the text messages without authentication was harmless. *See Tavares v. State*, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) ("The test . . . is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))). During trial, Talley admitted to driving the Camry that Brown had rented, and surveillance footage also placed Talley in the car. The text messages offered were vague, did not clearly support that Talley was in possession of the car, and in no way linked Talley to the murders. Accordingly, the improperly admitted text messages were inconsequential considering Talley's own testimony.

*The district court did not abuse its discretion when it admitted specific autopsy photographs*

Talley contends the district court abused its discretion by allowing the State to introduce prejudicial autopsy photographs. The State responds that the admitted photographs represented a small portion of the original autopsy photo set, were necessary to show the causes of death, and were important in demonstrating the victims' positions in the car based on

SUPREME COURT
OF
NEVADA

(O) 1947A

the angles of the gunshot wounds. Additionally, because the original medical examiner who conducted the examination of Chicas passed away before trial, the photographs were needed to establish the basis for the testifying medical examiner's opinions regarding the original examination. Regarding Mendoza's autopsy photos, the prosecution offered only one photograph out of hundreds to show her cause of death. We review a district court's decision to admit photographic evidence for an abuse of discretion. *West v. State*, 119 Nev. 410, 420, 75 P.3d 808, 815 (2003).

"Photographs have long been used in criminal cases to put before juries the image of dead victims . . . [to] show cause of death, identity of the victim, position of the body, the nature and relationship of the wounds, and the appearance of the scene." *Harris v. State*, 134 Nev. 877, 880, 432 P.3d 207, 210 (2018) (omission and alteration in original) (internal quotation marks omitted). "NRS 48.035 requires the district court to act as a gatekeeper by assessing the need for the evidence on a case-by-case basis and excluding it when the benefit it adds is substantially outweighed by the unfair harm it might cause." *Id.* at 880, 432 P.3d at 211. The record reflects the district court properly considered the need for the photographs in light of their probative value over any undue prejudice to Talley. The court reasoned the photographs were relevant to establish facts such as the causes of death. The court also made clear that the autopsy photographs of Chicas were necessary due to the unavailability of the original medical examiner, and even then, not all pictures were admitted. Regarding Mendoza, the court admitted only one autopsy photograph to demonstrate her cause of death. Thus, we conclude that the district court did not abuse its discretion and Talley's contention lacks merit.

*Talley fails to demonstrate that the district court committed plain error during sentencing*

Talley argues that the district court violated his Fifth Amendment right against self-incrimination by considering his lack of remorse at sentencing. Talley acknowledges that no objection was raised below. "When an error has not been preserved, this court employs plain-error review." *Valdez*, 124 Nev. at 1190, 196 P.3d at 477. "Under that standard, an error that is plain from a review of the record does not require reversal unless the defendant demonstrates that the error affected his or her substantial rights, by causing 'actual prejudice or a miscarriage of justice.'" *Id.* (quoting *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003)).

Talley asserts that the district court imposed a harsher sentence because he refused to admit guilt. At sentencing, the judge remarked, "I thought today there would be a moment of peace and a moment of remorse, and there wasn't. And I think that that just goes to show that the State's request is appropriate." Talley relies on *Brown v. State*, 113 Nev. 275, 290, 934 P.2d 235, 245 (1997), and *Bushnell v. State*, 97 Nev. 591, 593, 637 P.2d 529, 531 (1981), to argue the district court could not impose a harsher sentence based solely on a lack of remorse.

Both cases are distinguishable. In *Brown*, the "judge stated that he could show [the defendant] no mercy if [the defendant] continued to profess his innocence and also implied that he was going to give [the defendant] consecutive sentences if [the defendant] did not state that he was guilty." 113 Nev. at 290, 934 P.2d at 245. In *Bushnell*, this court noted "the sole reason for the disparity in sentences was the fact that [the defendant] maintained his innocence." 97 Nev. at 593, 637 P.2d at 531. Here, the district court considered the gravity of the crimes and the

enduring impact on the victims' families. The court's reference to Talley's lack of remorse was brief and not presented as the sole or controlling reason for the sentence imposed. Therefore, we conclude that Talley has not shown that the district court plainly erred or that any error affected his substantial rights.

*The district court did not abuse its discretion when instructing the jury*

Talley also argues the district court should have precluded jury instructions on implied malice, premeditation, reasonable doubt, and equal and exact justice because the language in those instructions could have confused the jurors. Trial courts have broad discretion in settling jury instructions, and we review those decisions for abuse of discretion. *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005).

The State and Talley both note the instructions at issue have consistently been upheld by this court. We have upheld the language in the implied malice instruction. *See Leonard v. State*, 117 Nev. 53, 78-79, 17 P.3d 397, 413 (2001) (concluding the statutory language of implied malice is well established in Nevada, and although the phrases are not common in today's general parlance, their use does not deprive a defendant of a fair trial). This court has also upheld the language in the premeditation instruction. *See Byford v. State*, 116 Nev. 215, 236-37, 994 P.2d 700, 714-15 (2000). In addition, this court has upheld the language in the reasonable doubt instruction. *See Chambers v. State*, 113 Nev. 974, 982-83, 944 P.2d 805, 810 (1997). Finally, this court has repeatedly upheld the equal and exact justice instruction. *See Thomas v. State*, 120 Nev. 37, 46, 83 P.3d 818, 824 (2004); *Daniel v. State*, 119 Nev. 498, 522, 78 P.3d 890, 906 (2003); *Leonard v. State*, 114 Nev. 1196, 1209, 969 P.2d 288, 296 (1998). Given the body of precedent, we conclude the district court did not abuse its discretion when it presented the jury with these instructions.

 

*No cumulative error*

Finally, Talley's claim that he is entitled to a new trial based on cumulative error is meritless. "Because we discern only one error, there is nothing to cumulate." *Barlow v. State*, 138 Nev. 207, 221, 507 P.3d 1185, 1199 (2022).

## CONCLUSION

Authentication is the gateway through which evidence must pass. The district court skipped an essential step when it admitted text messages without confirming authorship. The court erred in addressing hearsay before first deciding whether the messages were what the State purported them to be. Even so, that error did not impact the outcome because the evidence of Talley's guilt was overwhelming. On the remaining claims, the district court acted within its discretion, and the State did not shift the burden of proof or violate Talley's rights. Talley's arguments regarding insufficient evidence and plain error during sentencing lack merit. Accordingly, we affirm the judgment of conviction.

_____, J.
Bell

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich